DOROTHY E. BANNON, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 26900–90.          Filed July 20, 1992.

*Martin Tierney,* for petitioner.
*Bridgette M. Gibson,* for respondent.

HAMBLEN, *Chief Judge:* This case was assigned to Special Trial Judge Helen A. Buckley pursuant to section 7443A(b)(3) and Rules 180, 181, and 182.[1] The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below.

### OPINION OF THE SPECIAL TRIAL JUDGE

BUCKLEY, *Special Trial Judge:* Respondent determined a deficiency in petitioner's 1986 Federal income tax in the amount of $807. After concessions,[2] the sole issue for decision is whether the amount of $5,789 received by petitioner during 1986 under the California Department of Social Services' (CDSS) in-home supportive services program is excludable from petitioner's income.

### FINDINGS OF FACT

Upon joint motion of the parties, this matter was submitted fully stipulated. The stipulation of facts and attached exhibits are incorporated herein by reference. Petitioner resided at Lodi, California, at the time of the filing of her petition.

During all of 1986, petitioner's 37-year old mentally retarded daughter, Carol, resided with petitioner in her home. Carol is physically handicapped and confined to a wheelchair. Her mental and physical disabilities required around-the-clock total care, including dressing, bathing, grooming, feeding, and ambulation. Other than 20 hours per month when Carol was cared for by an unrelated third party, all of her personal nonmedical needs were attended to by petitioner.

For a number of years prior to 1985, Carol had been a ward of the State of California and received institutional care. Sometime in late 1985, Carol was released into the custody of petitioner upon petitioner's request. The San Joaquin County Human Services Agency, a local welfare agency

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year at issue; Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Petitioner concedes that she received unreported rental income in the amount of $200 and that she is not allowed to deduct $491 of claimed rental depreciation.

under the jurisdiction of the CDSS, determined that Carol required 160.3 hours per month of nonmedical in-home supportive services. Thus Carol was entitled to receive State assistance to pay for 160.3 hours per month of nonmedical personal care. Under California law, Carol was considered a "recipient" and the persons providing her with care were "providers".

The State of California acts as a payroll agent to the providers and to Carol. Cal. Welf. & Inst. Code sec. 12302.2. (West 1991 & Supp. 1992.) Due to Carol's incompetence, petitioner had authority to act on her behalf in selecting the care providers. Petitioner selected an unrelated third party to care for Carol for about 20 hours per month, and she provided care to Carol for the remainder of the allotted time. Petitioner also provided many hours of care for Carol for which she was not compensated.

Providers were required by CDSS to submit monthly time sheets certifying the number of hours of approved care provided to Carol. Accordingly, petitioner and the individual she hired submitted monthly time sheets. The CDSS acted as the disbursing agent for Carol. For the period January through May of 1986, petitioner, on behalf of Carol, requested that funds be disbursed under an advance payment method. Under this method, monthly checks were advanced to Carol at the beginning of each month in an amount that assumed 160.3 hours of in-home supportive care. Though unclear, petitioner evidently cashed the checks on behalf of Carol and paid herself as well as the other provider. During this period, the time sheets submitted at the end of each month were verified by the local welfare agency to insure the propriety of amounts advanced.

For the period June through December of 1986, petitioner, acting on Carol's behalf, requested that the payment method be changed so that checks were disbursed directly to, and in the names of, petitioner and the other provider. Under this payment method, checks were disbursed only after the month-end submission of time sheets. Regardless of the payment method, the CDSS considered Carol as recipient of the benefits and as employer of the personal care service providers.

The CDSS issued petitioner a Form W-2 for 1986 on behalf of Carol. The W-2 lists Carol as the employer and petitioner

as the employee. It indicates compensation paid to petitioner in the amount of $5,789.70. Petitioner did not include this amount in income on her 1986 Federal income tax return. By notice of deficiency, respondent determined that petitioner was taxable on $5,789,[3] asserting it to be income under section 61.

The question presented is one not heretofore decided: Whether payments made under California's in-home supportive services program are taxable to a parent who receives the payments as a provider of care to her disabled adult child. We now consider it. Our decision will impact a significant number of similarly situated taxpayers.

## OPINION

Petitioner bears the burden of proving respondent's determination is incorrect. Rule 142(a); *Welch v. Helvering,* 290 U.S. 111 (1933). That the case was submitted fully stipulated has no effect on the burden of proof. See Rule 122(b); *Meunier v. Commissioner,* T.C. Memo. 1991-446.

Generally, "all income from whatever source derived" is subject to taxation unless excluded by law. Sec. 61(a); *Commissioner v. Glenshaw Glass Co.,* 348 U.S. 426 (1955). Specifically included within the statutory definition of gross income is: "Compensation for services". Sec. 61(a)(1). Respondent argues that the income at issue was received by petitioner as compensation for the nonmedical care she provided her daughter, and, since there is no Code provision to exempt it, the income is subject to tax. Petitioner, on the other hand, contends that the income received was in the nature of a government welfare benefit or subsidy and is therefore nontaxable.

Though no statutory exclusion for a welfare benefit appears in the Internal Revenue Code, and there is a dearth of case law on the subject, respondent has consistently taken the position, in a number of Revenue Rulings, that Government disbursements promoting the general welfare are not taxable. See, e.g., Rev. Rul. 78-170, 1978-1 C.B. 24 (Government payments to assist low-income persons with utility costs are not income); Rev. Rul. 76-395, 1976-2 C.B. 16, 17 (Government grants to assist low-income city inhabitants to

---

[3] The parties have stipulated that this is the amount at issue.

refurbish homes are not income); Rev. Rul. 76-144, 1976-1 C.B. 17 (Government grants to persons eligible for relief under the Disaster Relief Act of 1974 are not income); Rev. Rul. 74-153, 1974-1 C.B. 20 (Government payments to assist adoptive parents with support and maintenance of adoptive children are not income); Rev. Rul. 57-102, 1957-1 C.B. 26 (Government benefits paid to blind persons are not income). This Court has acknowledged the existence of the "general welfare doctrine" of income exclusion. *Bailey v. Commissioner*, 88 T.C. 1293, 1299-1301 (1987); *Graff v. Commissioner*, 74 T.C. 743, 753-754 (1980), affd. per curiam 673 F.2d 784 (5th Cir. 1982). The Supreme Court, referring to a New York State low-income housing subsidy, has said: "In a real sense, it no more embodies the attributes of income or profits than do welfare benefits, food stamps, or other government subsidies." *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 855 (1975).

In the case at bar, respondent concedes in her trial memorandum that the benefits paid by California to provide in-home supportive services to its disabled citizens are not income to recipients. Respondent posits, however, that petitioner was not a recipient of the benefits; rather, she was employed by the recipient, her daughter Carol, as a care provider, and thus the payments are taxable to petitioner as compensation. We agree.

California's in-home supportive services legislation is codified at Article 7 of the California Welfare and Institutions Code. See Cal. Welf. & Inst. Code secs. 12300-12314. (West 1991 & Supp. 1992.) A plain reading of these provisions makes clear that the legislative purpose is to establish a program for providing nonmedical personal services to the aged, blind, or disabled "who are unable to perform the services themselves and who cannot safely remain in their homes or abodes of their own choosing unless these services are provided." Cal. Welf. & Inst. Code sec. 12300. Throughout these sections, the person qualifying for in-home supportive services is referred to as the "recipient".

Under the legislative scheme, the CDSS promulgates regulations as guidelines for administering the program, and each county welfare department prepares a detailed plan for making in-home supportive services available to eligible recipients. Cal. Welf. & Inst. Code secs. 12301, 12301.1, 12302.

The plan is subject to review by the CDSS which supervises and monitors the county departments in carrying out the plan. The recipient may choose his or her own provider or may have one selected by the CDSS. Cal. Welf. & Inst. Code sec. 12302. Remuneration may be paid directly to the provider by the CDSS or through the recipient to the provider. Cal. Welf. & Inst. Code secs. 12302, 12302.2. Regardless of how provider remuneration is paid, it is clear to us that under this scheme the intended beneficiary of the welfare payments is the recipient of the services, in this case Carol, not the provider, petitioner.

Petitioner insists nevertheless that under the general welfare doctrine the provider payments made to her are not subject to Federal income taxation. She cites *Miller v. Woods,* 148 Cal. App. 3d 862, 196 Cal. Rptr. 69 (1983), wherein a California Court of Appeal struck down a CDSS regulation which denied payments for certain in-home supportive services provided by live-in housemates of recipients. In so doing, the court discussed the legislative intent underlying the enactment of California's in-home supportive services program. The court observed that the majority of housemates caring for recipients are relatives. It found that certain of the legislative goals were aimed at avoiding institutionalization of recipients by enabling them to live at home and to choose their own providers, including relatives. It held that these goals were being undermined by the regulation. *Miller v. Woods, supra* at 875-880, 196 Cal. Rptr. at 78-81. Petitioner concludes from this that the provider payments to her fall within the category of nontaxable payments promoting the general welfare.

Our reading of *Miller v. Woods, supra,* does not lead us to the same conclusion. The holding merely placed related providers in petitioner's shoes on equal footing with nonhousemate providers, allowing them to receive compensation for services where previously such compensation had been denied. The court noted that the offending regulation required housemates to volunteer their services, a consequence which ran contrary to the legislative intent to encourage provider care by relatives. It also noted that while the legislature expressly denied payments for services provided by certain persons, i.e., parents caring for a minor child and a person caring for his or her spouse (see Cal. Welf.

& Inst. Code secs. 12300, 12301, 12350), it refrained from doing so for housemates. *Miller v. Woods, supra* at 877, 196 Cal. Rptr. at 79. While it is clear, then, that the California legislature intended to allow provider payments to housemates, it does not necessarily follow that housemates were intended to be the beneficiaries of the welfare program.

In a broad sense, all provider payments made pursuant to the program could be viewed as being in the public interest, since purchase of the services plays an integral part in fulfilling the legislative objectives of the program. However, as we stated in *Graff v. Commissioner, supra* at 753-754, only the persons intended as the "ultimate beneficiaries" of the Government subsidy can be said to have received a welfare benefit excludable from tax. The issue in *Graff* involved section 236 of the National Housing Act, which provides that qualifying sponsors of low-income housing projects are entitled to interest reduction payments by the Federal Government on mortgage loans taken to acquire the housing. The interest reduction payments made it possible for sponsors to pass on low rental rates to eligible tenants. In deciding that the interest reduction payments constituted income to the sponsors we stated at 753-754:

The interest reduction payments made on behalf of the sponsor reduced the total operating costs of a Section 236 project by lowering, in effect, the rate of interest on the sponsor's mortgage to 1 percent, thus enabling the sponsor to charge lower rents to the tenants. * * * Thus, the tenant was intended to be the ultimate beneficiary of the interest reduction payments, and the benefit received by him is in the nature of welfare not taxable to him. * * * These considerations furnish no reason to believe that the sponsor was to receive a benefit in the nautre [sic] of welfare. [*Graff v. Commissioner,* 74 T.C. at 753-754.]

As used in *Graff,* the words "ultimate beneficiary" should not be read to mean the class of persons last in line to receive the benefit; rather, they denote the class of persons definitively established by law as intended beneficiaries of the subsidy. In the case at bar, it is clear that California's in-home supportive services law was enacted to benefit aged, blind, or disabled persons in need of the care they cannot provide for themselves. Notwithstanding the fact that providers of the services receive government funds as compensation, it is the eligible recipients of the supportive services who are

"intended to be the ultimate beneficiar[ies]" of the welfare benefits. *Id.*

Moreover, in every sense the payments to petitioner were treated by the CDSS as compensation for services. To receive payment, petitioner was required, like any unrelated provider, to submit detailed time records certifying the number of hours of supportive services she rendered. Payment was contingent upon submission, and CDSS review and approval, of these records. In addition, the CDSS, on behalf of Carol, issued petitioner an IRS Form W-2 for 1986 reflecting the payments as compensation.

Petitioner points out that she cared for her daughter around the clock, not just during the hours for which she was compensated. We take it that petitioner is suggesting that the time records were a meaningless exercise of paperwork, and that in essence she received a form of welfare assistance covering only a portion of the cost to take care of her daughter. As we have said, however, such a claim asks us to close our eyes to the benefit payment scheme contemplated by the California legislature. Under California law, petitioner had no legal obligation to provide the care provided to her adult daughter. See Cal. Welf. & Inst. Code sec. 12350. Persons who are so obligated, i.e., parents of minor children and spouses, are compelled by the California legislature to volunteer the services without compensation from the State. Therefore, it is untenable to say that the State intended to provide petitioner with welfare assistance to take care of her daughter. Petitioner is merely allowed, unlike the parent of a minor child whom the State expects to provide the services without compensation, to be compensated for a portion of the time she provides supportive services to her daughter.

Petitioner's situation is sympathetic. She is to be lauded for the beneficence and compassion she has shown to her disabled daughter. But we cannot grant petitioner the relief she seeks. Cf. *Pesch v. Commissioner,* 78 T.C. 100, 130-131 (1982); *Lorain Avenue Clinic v. Commissioner,* 31 T.C. 141, 164 (1958). We hold that petitioner's receipt of payments under California's in-home supportive services program did not constitute a welfare benefit to her and is therefore includable in her income for Federal income tax purposes.

*Decision will be entered for respondent.*