T.C. Memo. 2000-306

UNITED STATES TAX COURT

PATRICIA L. BALDWIN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4471-99.                    Filed September 27, 2000.

<u>Carolyn J. Jackson</u>, for petitioner.

<u>Jennifer L. Nuding</u>, for respondent.

MEMORANDUM OPINION

GOLDBERG, <u>Special Trial Judge</u>:  Respondent determined
deficiencies in petitioner's Federal income taxes and additions
to tax in the following amounts for the following taxable years:

| | | Additions to Tax | | |
|---|---|---|---|---|
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654(a) |
| 1994 | $4,549 | $1,023.52 | $1,023.52 | $234.38 |
| 1995 | 2,869 | 645.52 | 473.38 | 156.62 |
| 1996 | 3,344 | 752.40 | 351.12 | 180.06 |

Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions by the parties,[1] the sole issue for decision is whether payments petitioner received for nursing and attendant care services she provided to her permanently disabled husband must be included in petitioner's gross income for the 1994, 1995, and 1996 taxable years.

This case was submitted fully stipulated pursuant to Rule 122. The stipulation of facts and the attached exhibits are

---

[1] Petitioner concedes that she received the following amounts which are includable in gross income for 1994: (1) Gambling winnings of $3,700; (2) patronage dividends of $1,026; and (3) pensions/annuities of $1,266. Petitioner also concedes that she received the following amounts which are includable in gross income for 1995: (1) Patronage dividends of $320; and (2) pensions/annuities of $504.

Respondent makes the following concessions: (1) That only $1,266 of the $2,532 petitioner received from the Social Security Administration is includable in gross income for 1994; (2) for the 1995 taxable year, that petitioner is not required to include in gross income $300 of the payments reported as paid to petitioner by Healthcare Corp. and that only $504 of the $1,968 petitioner received from the Social Security Administration is includable in gross income; (3) that petitioner and Mr. Baldwin were married during the years in issue and are therefore entitled to married, filing jointly status for the 1994, 1995, and 1996 taxable years; (4) that petitioner's son, Floyd, was a dependent of petitioner and Mr. Baldwin during the 1994 and 1995 taxable years and that petitioner's children, Emma and Sam, were dependents of petitioner and Mr. Baldwin during the 1994, 1995, and 1996 taxable years; and (5) that petitioner is not liable for the additions to tax pursuant to secs. 6651(a)(1), (2), and 6654(a).

incorporated herein by this reference.  At the time of filing the petition, petitioner resided in Remus, Michigan.

Petitioner has been married to Tony L. Baldwin (Mr. Baldwin) for more than 30 years, including the years in issue.  They have 7 children from their marriage.  Mr. Baldwin has been an employee of General Motors Company, Buick Division (GM) since 1965, working for the first 10-1/2 years in GM's foundry without difficulty.  It was not until after automation eliminated his permanent position, requiring Mr. Baldwin to move from job assignment to job assignment, that Mr. Baldwin began to experience emotional problems.  These emotional problems progressively worsened through late 1975 to early 1976.  Beginning in 1976, Mr. Baldwin sought medical and psychiatric help from various doctors and hospitals.  Throughout 1976 to 1979, Mr. Baldwin took medical leave from his position at GM, ranging from a few weeks to a few months at a time.  In late 1976, Mr. Baldwin was diagnosed with paranoid schizophrenia by his attending physician.  Mr. Baldwin retired from GM on total and permanent disability on June 1, 1979.

On August 27, 1980, Mr. Baldwin filed a claim for worker's compensation benefits against GM for work-related injuries and for total and permanent disability on a psychiatric basis.  Mr. Baldwin filed an amended claim on October 21, 1980.  Both claims

were denied by an administrative law judge, and Mr. Baldwin appealed the decision.

On April 14, 1987, the Worker's Compensation Appeals Board (Appeals Board) reversed the decision of the administrative law judge and found that Mr. Baldwin suffered from a work-related disability and was totally and permanently disabled because of a mental incapacity resulting from his employment with GM. The Appeals Board determined Mr. Baldwin's date of injury was June 7, 1978. Consequently, the Appeals Board ordered that Mr. Baldwin receive compensation from October 27, 1978, pursuant to the Michigan Worker's Disability Compensation Act, Mich. Comp. Laws section 418.315(1) (1985) (Michigan Act). The Appeals Board decision did not address attendant care expenses.

During the beginning of Mr. Baldwin's emotional and mental problems, petitioner worked part-time but for no appreciable period of time. Beginning in 1980 and continuing through the years in issue, petitioner provided attendant and nursing care for Mr. Baldwin, which required more of her time as his symptoms worsened. Though petitioner is neither a registered nor a licensed practical nurse, she was able to care for Mr. Baldwin by: (1) Administering medication; (2) watching for early warning signs of paranoia, depression, or behavioral changes; (3) monitoring his sleep patterns; (4) ensuring that he did not drink alcoholic beverages; (5) taking him to the doctor; and (6)

generally following the directions of Mr. Baldwin's doctors and nurses. Petitioner also took care of their 7 children and managed their small farm when she was not attending to her husband's medical needs.

On May 3, 1988, Mr. Baldwin made a written claim for expenses relating to nursing and attendant care provided by petitioner from 1980 onward pursuant to the Michigan Act. In December of 1989, a magistrate of the Michigan Bureau of Worker's Disability Compensation found that petitioner provided attendant and nursing care to Mr. Baldwin as defined under the Michigan Act and awarded petitioner reimbursement for services rendered. The magistrate's award provided that petitioner was entitled to be reimbursed in an amount equal to $8 per hour for 12 hours a day and $12 an hour for hours in excess of 40 hours per week.[2] The magistrate estimated that petitioner spent 12 hours per day providing care for Mr. Baldwin and held that the hourly rates and number of hours per week shall be payable until further notice. Both Mr. Baldwin and GM appealed the decision.

The Worker's Compensation Appellate Commissioner of the State of Michigan (Appellate Commissioner), upheld the magistrate's decision except that the Appellate Commissioner

---

[2] For care provided after July 30, 1985, petitioner's reimbursable time was limited to 56 hours per week. Mich. Comp. Laws section 418.315(1) (1985).

modified the date on which payment for attendant and nursing care services would begin and held that petitioner would receive payment for services rendered from September 19, 1981, and not from 1980 as ordered by the magistrate.[3]

During the years in issue, petitioner received attendant and nursing care payments at a rate of $2,218.67 per month from GM's insurance carrier, Healthcare Compare Corporation[4] (Healthcare) for a total of $26,624, $24,405,[5] and $28,842 during 1994, 1995, and 1996, respectively, pursuant to the Appellate Commissioner's order. During 1994, 1995, and 1996, petitioner received 12 payments, 11 payments, and 13 payments, respectively. All payments received from Healthcare were made payable to petitioner solely in her name.

In 1995, Healthcare began reporting the payments it made to petitioner to the Internal Revenue Service (IRS) as "medical payments" by issuing Form 1099 to petitioner. According to petitioner, Healthcare's reports to the IRS were inconsistent with previous representations made by Healthcare's predecessor

---

[3] Baldwin v. GMC, 5 MIWCLR par. 1014 (Mich. Workers' Comp. App. Commn., 1992).

[4] Healthcare Compare Corp. is currently named First Health.

[5] Though the notice of deficiency for 1995 states that Healthcare reported to the Internal Revenue Service payments to petitioner of $24,705 for the 1995 taxable year, the parties stipulated that petitioner received payments from Healthcare in the amount of $24,405 in 1995.

corporation which allegedly told her that the attendant and nursing care payments were not includable in petitioner's gross income and did not require the issuance of a Form 1099.

In separate notices of deficiency for the 1994, 1995, and 1996 taxable years, respondent determined that the payments petitioner received from Healthcare were properly includable in petitioner's gross income. Petitioner did not file her Federal income tax returns for each year in issue prior to the mailing of the notice of deficiency for the specific year.

It is petitioner's contention that the payments from Healthcare are excludable from her gross income because it is considered compensation for personal injuries, as permitted under section 104(a)(1). In the alternative, petitioner argues that the payments she received under the Michigan worker's compensation order are a direct result of Mr. Baldwin's personal injury arising out of his course of employment with GM. Therefore, the reimbursement would likewise not be includable in her gross income for the years in issue.

Respondent contends that Healthcare's payments awarded to petitioner under the Michigan Act were not received on account of personal injuries or sickness of the petitioner as required under section 104(a)(1). Instead, the payments were compensation to a familial attendant-care provider for services provided to a disabled former employee. Therefore, the payments are not

excludable from petitioner's gross income under section 104(a)(1). We agree with respondent.

Section 61(a) broadly defines gross income as "all income from whatever source derived". Compensation for services is expressly included within this broad definition. See sec. 61(a)(1).

Under section 104(a)(1), amounts received as worker's compensation are excluded from gross income. However, the Court has held that "statutes granting tax exemptions should be strictly construed." Kane v. United States, 43 F.3d 1446, 1449 (Fed. Cir. 1994); see Commissioner v. Jacobson, 336 U.S. 28, 39 (1949). A taxpayer seeking a deduction or exclusion from gross income "must be able to point to an applicable statute and show that he comes within its terms." New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

Section 104(a)(1) excludes from gross income "amounts received under workmen's compensation acts as compensation for personal injuries or sickness". Section 1.104-1(b), Income Tax Regs., includes amounts received by an employee "under a statute in the nature of a workmen's compensation act which provides compensation to employees for personal injuries or sickness incurred in the course of employment." Therefore, in order to resolve this matter, we must consider the relevant provisions of the worker's compensation act under Michigan law and determine

the reason why the payments are paid.  See <u>Givens v. Commissioner</u>, 90 T.C. 1145, 1148, 1152 (1988); <u>Dyer v. Commissioner</u>, 71 T.C. 560, 562 (1979).

In this case, the payments received by petitioner for attendant and nursing care services rendered to her husband were paid under a claim filed by Mr. Baldwin with the Michigan Bureau of Worker's Disability Compensation pursuant to the Michigan Act. The section provides, in part, that:

> The employer shall furnish, or cause to be furnished, to an employee who receives a personal injury arising out of and in the course of employment, reasonable medical, surgical, and hospital services and medicines, or other attendance or treatment recognized by the laws of this state as legal, when they are needed...Attendant or nursing care shall not be ordered in excess of 56 hours per week if the care is to be provided by the employee's spouse, brother, sister, child, parent or any combination of these persons.

This statute requires employers to furnish "reasonable medical" or "other attendance or treatment" services to a disabled employee as they are "needed".  In holding that petitioner was entitled to payment for attendant and nursing care, the Appellate Commissioner considered the type of particular services rendered by petitioner, the number of hours of day petitioner provided those services, and the value of such services.  Petitioner's services to Mr. Baldwin clearly falls under this statute as exhibited in the Appellate Commissioner's order.

The Michigan Supreme Court has addressed the nature and purpose of the payments made under this statute in Kushay v. Sexton Dairy Co., 228 N.W.2d 205 (Mich. 1975). In Kushay, the Court found that where the wife of a disabled husband, who became totally and permanently disabled, performed services of attendant care under the statute, the employer has a "duty to compensate him or her as the person who discharges the employer's duty to provide them." Id. at 74. If services are rendered as provided by the statute, by the spouse or a third party, the employer has an obligation to pay for them. Id. at 74. Also, in Dunaj v. Harry Becker Co., 217 N.W.2d 397, 399-400 (Mich. Ct. App. 1974), the Court of Appeals of Michigan held that medical services provided by a claimant's wife were "compensable to the same extent as they would be if the services had been rendered by someone other than the wife."

In order to receive payments as an attendant-care provider, petitioner had to provide attendant and nursing care services to her husband. Likewise, GM was under an obligation to furnish payments for attendant and nursing care services rendered by petitioner or a third party.

This Court has addressed a similar issue in Bannon v. Commissioner, 99 T.C. 59 (1992), where a California statute allowed taxpayer to receive welfare benefits for providing nonmedical care to her disabled adult daughter, the recipient of

the welfare payments.  The Court found that taxpayer's daughter employed taxpayer to provide services, that payments were disbursed in the name of the disabled daughter during the first half of the year under an advance payment method, whereas, payments were directly disbursed to petitioner-health care provider and the other provider, during the last half of the year.  At all times during the year in issue, the agency disbursing the funds considered the disabled daughter as the recipient of the benefits and the employer of the care providers.  Therefore, the payments were includable in the taxpayer's gross income as compensation.  See id. at 66.

Moreover, petitioner's case is almost identical to the facts in Goldman v. United States, 79 F. Supp. 2d 1356 (N.D. Ga. 1998), affd. per curiam without published opinion 196 F.3d 1262 (11th Cir. 1999).  In Goldman, Mrs. Goldman received reimbursement under a similar Florida statute for providing attendant care to her fully disabled husband.  Mrs. Goldman did not include amounts received for services on their joint return because she argued the payments were fully excludable under section 104(a)(1).  In a refund action, the U.S. District Court for the Northern District of Georgia, applying Florida law, found that an award of attendant-care services for care given by taxpayer was properly included in gross income as compensation for services under the doctrine of anticipatory assignment.  The Court held that the

fact that checks were received in Mr. Goldman's name from the employer's insurance carrier did not necessitate exclusion under section 104(a)(1). The true earner was Mrs. Goldman for the services she provided to her disabled husband under the statute.

Clearly, in this case, petitioner is not the intended recipient of amounts received under a workmen's compensation act as specified in section 104(a)(1). There is no question that amounts received by Mr. Baldwin from the workmen's compensation award falls under the section 104(a)(1) exclusion from gross income.

However, because the payments to petitioner were for attendant and nursing care services rendered by petitioner to Mr. Baldwin, the amounts paid to petitioner do not constitute amounts "received under workmen's compensation acts as compensation for personal injuries or sickness" pursuant to section 104(a)(1) or amounts received by an employee "under a statute in the nature of a workmen's compensation act" pursuant to section 1.104-1(b), Income Tax Regs. Petitioner received amounts from GM as compensation for services rendered, albeit to her husband, as an attendant-care provider. The source of her income is derived from a separate State statute for assistance as an attendant-care provider and does not arise from the same workmen's compensation statute which awarded Mr. Baldwin's workmen's compensation benefits. The payments herein are compensation for attendant and

nursing care services rendered to an individual who is receiving disability payments. Respondent is sustained on this issue.

In the alternative, petitioner apparently contends that the payments for the years in issue should be excludable from gross income because of a prior representation from Healthcare's predecessor corporation. Though Healthcare's predecessor corporation may have made representations that the payments received by petitioner were not includable in gross income, the prior representation is irrelevant as to whether the payments are includable in gross income for the years in issue.

Finally, petitioner's counsel in Petitioner's Opening Brief contends for the first time that the payments from Healthcare are excludable from petitioner's gross income for the years in issue as amounts received pursuant to an insurance plan under section 105(b).

Respondent contends that because the applicability of section 105(b) was not raised until Petitioner's Opening Brief, the record is devoid of any evidence regarding whether or not section 105(b) is applicable in this case.

The rule that a party may not raise a new issue on brief is not absolute, but it is founded upon the determination as to whether considerations of surprise and prejudice require that a party be protected from having to face a belated confrontation which precludes or limits that party's opportunity to present

pertinent evidence.  See Ware v. Commissioner, 92 T.C. 1267, 1268 (1989), affd. 906 F.2d 62 (2d Cir. 1990).

Though petitioner has failed to establish in the record before us that the Michigan Worker's Compensation Act qualifies as "an accident and health plan" as defined in section 105(e), and has further failed to establish that the payments she received from Healthcare are "amounts received by an employee" pursuant to section 105(a), the issue can be decided based solely on the language of the relevant statute, and we shall therefore allow petitioner to argue her reliance on section 105 in her brief.

Petitioner's contention that her payments are excludable from gross income for the years in issue pursuant to section 105(b) is not supported by the language of section 105.  Section 105(a) excludes certain "amounts received by an employee" from gross income and section 105(b) excludes "amounts referred to in subsection (a) if such amounts are paid, directly or indirectly, to the taxpayer to reimburse the taxpayer" for incurred medical expenses.  Section 105 concerns the tax treatment of the employee and not the attendant-care provider.  Petitioner in this case is clearly not a taxpayer being reimbursed for medical expenses but an attendant-care provider being paid for services rendered to such a taxpayer.

We agree with respondent's contention that the payments to petitioner were received by petitioner in her role as a care provider to Mr. Baldwin and that she was required to provide attendant and nursing care in order to receive the payments as compensation for services rendered to Mr. Baldwin.  Although we are sympathetic with petitioner's circumstances, we are constrained by the Michigan statute and pertinent caselaw in defining petitioner's income for attendant-care services to her husband as compensation.  The payments are therefore includable in petitioner's gross income for the years in issue as compensation for the attendant and nursing care services she provided to Mr. Baldwin.

Upon the basis of the record, we therefore hold that the payments to petitioner from Healthcare are includable in her gross income for the years in issue.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.