**CHRYSTALIA ETIENNE, Appellant/Defendant**

**v.**

**ASHLEY ETIENNE, Appellee/Plaintiff**

S. Ct. Civil No. 2010-0100

Supreme Court of the Virgin Islands

May 16, 2012

LESLIE LEVI PAYTON, ESQ., The Payton Law Firm, St. Thomas, USVI, *Attorney for Appellant*[1].

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and HODGE, *Designated Justice*.[2]

## OPINION OF THE COURT

(May 16, 2012)

CABRET, *Associate Justice*. Chrystalia Etienne appeals the Superior Court's denial of her motion to vacate the divorce decree that legally ended her marriage to Ashley Etienne. Specifically, Chrystalia argues that the Superior Court should have vacated the divorce decree because, by failing to permit her the opportunity to retain counsel before issuing the divorce decree, it violated her due process rights. For the reasons that follow, we affirm the Superior Court's October 18, 2010 divorce decree.

---

[1] The appellee, Ashley Etienne, did not file a brief or otherwise participate in this appeal.

[2] Associate Justice Ive Arlington Swan has been recused from this matter. The Honorable Verne A. Hodge sits in his place by designation pursuant to title 4, section 24(a) of the Virgin Islands Code.

## I. FACTS AND PROCEDURAL HISTORY

On May 22, 2006, Ashley filed a complaint with the Family Division of the Superior Court in St. Thomas seeking a divorce from his wife, Chrystalia. At that time, and until August 24, 2009, Chrystalia was incarcerated at the Golden Grove Correctional Facility on St. Croix. Throughout the divorce proceedings before the Superior Court, Ashley was represented by counsel while Chrystalia represented herself. Over the first few years of the suit, both parties filed numerous motions and letters with the Superior Court, until the Court, on August 1, 2008, issued an order requiring both parties to engage in mediation to settle the custody, property, and support disputes. On December 7, 2009, the parties met at the court-ordered mediation conference, where they signed a Settlement Agreement which stated that the parties held no joint real property subject to division, agreed to finalize the divorce, agreed to waive alimony, agreed to joint legal and physical custody of the couple's four children, agreed that Ashley would pay Chrystalia child support as determined by the Department of Justice, and agreed to a disposition of their personal property. Both parties, by signing the Settlement Agreement, represented that it was a final disposition of their claims against each other and that there were no further disputes.

On December 16, 2009, a little more than a week after the mediation, Chrystalia filed a motion with the Superior Court requesting a hearing date and stating that three additional issues remained unresolved. Specifically, she claimed an interest in the residence she and Ashley lived in during the marriage, which is apparently on land owned by Ashley's parents; she also claimed an interest in a vehicle; and finally she claimed an interest in the proceeds from two income tax refund checks that were issued to Ashley after joint filings in 2000 and 2001. On September 9, 2010, the Superior Court judge held a status hearing on the case and indicated that she would consider and rule on Chrystalia's motion. At that hearing, Chrystalia claims she indicated to the Superior Court that she would be retaining counsel to represent her from that point onward.[3]

---

[3] We note that the transcript of the September 9, 2010 hearing — which Chrystalia did not include in the Joint Appendix, but which this Court ordered on its own to independently verify the claims in Chrystalia's brief — contains absolutely no indication that Chrystalia ever requested time to retain private counsel. Unfortunately, the Superior Court conducted an off-the-record side bar during the hearing, and thus it is theoretically possible that

However, on October 18, 2010, without specifically addressing Chrystalia's motion, the Superior Court entered an order making findings of fact and conclusions of law based on, and completely incorporating, the Settlement Agreement. On the same day, the Superior Court entered a final order of divorce and closed the case.

The following month, on November 17, 2010, Chrystalia's attorney, the same attorney now representing her on appeal, entered his first appearance and filed a motion to vacate the divorce decree arguing that the Superior Court failed to rule on Chrystalia's *pro se* motion to set a hearing date. Specifically, the motion to vacate was premised on the Superior Court's alleged failure to consider the three unresolved property disputes that Chrystalia identified in her motion. On December 7, 2010, the Superior Court denied the motion to vacate because it (1) had provided Chrystalia the relief she requested in the motion to set a hearing in that the Superior Court held a hearing on September 9, 2010 and (2) had fully considered all issues of property division prior to issuing its October 18, 2010 order. On December 24, 2010, Chrystalia filed a notice

---

Chrystalia may have made such a request. But pursuant to this Court's Rules of Appellate Procedure, the burden was on Chrystalia, in the absence of a complete transcript, to make the appropriate arrangements to construct a statement of the evidence or proceedings:

If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement shall be served on the appellee within 14 days after filing the notice of appeal (or entry of the order disposing of the type of timely motion specified in Rule 5(a)(4)), and the appellee may serve objections or proposed amendments thereto within 14 days after service. If the parties are not able to resolve any differences in the statement of the evidence or proceedings, the Supreme Court may refer the statement and any objections or proposed amendments to the Superior Court for settlement of the differences and approval, and the statement, as settled and approved, shall be returned to the Clerk of the Supreme Court as the record on appeal.

V.I.S.Ct.R. 10(c). Chrystalia, however, failed to ever file such a statement, or otherwise inform this Court of the absence of a complete transcript so that this Court may direct the Superior Court to approve a record for purposes of appeal. Nevertheless, because we find that the Superior Court would not have erred even if Chrystalia did make such a request, we find that judicial economy is better served by assuming the truth of Chrystalia's claim that she requested an opportunity to retain counsel and addressing that argument directly rather than ordering Chrystalia to prepare a statement in conformity with Rule 10 or remanding for additional factual findings.

of appeal to this Court.[4] In her appeal, Chrystalia raises an issue never brought before the Superior Court — that the court violated her due process rights by failing to give her sufficient time in order to retain counsel to represent her prior to entering the divorce decree.

## II. JURISDICTION

We have jurisdiction over this appeal pursuant to title 4, section 32(a) of the Virgin Islands Code, which provides that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." 4 V.I.C. § 32(a). The October 18, 2010 divorce decree dealt with all of the issues in the suit, closed the case, and· left " 'nothing to do but execute the judgment.' " *Rojas v. Two/Morrow Ideas Enters., Inc.*, 53 V.I.

---

[4] We note that, under the version of Virgin Islands Supreme Court Rule 5 effective at the time of her appeal, Chrystalia filed an untimely appeal. The motion to vacate was denied on December 7, 2010. The notice of appeal was filed on December 24, 2010, which was within the thirty-day window permitted by the rules in effect at the time of the appeal. However, Chrystalia's appeal does not challenge that denial, but instead challenges the initial October 18, 2010 divorce decree by arguing it was issued in violation of Chrystalia's due process rights. Clearly, the December 24, 2010 notice of appeal was filed outside the thirty day window that began to run from the entry of the October 18, 2010 order. However, our rules at the time Chrystalia appealed did permit certain motions to toll the time to appeal. It is not clear under what rule of civil procedure Chrystalia filed her "motion to vacate," but our Rule 5 at the time Chrystalia filed her notice of appeal only permitted a motion, regardless of its designation, to toll the time to appeal a final judgment if it was filed within fourteen days of the final judgment. Chrystalia filed her motion to vacate on November 17, 2010, twenty-nine days after the October 18, 2010 final order. Therefore, that motion, regardless of its designation, was insufficient to toll the time to appeal. Accordingly, the December 24, 2010 notice of appeal was untimely. Nevertheless, the timeliness rules under Rule 5 are claims processing rules that must generally be raised by the appellee, otherwise this Court considers any violation of Rule 5 to have been waived. *See Simpson v. Golden*, S. Ct. Civ. No. 2010-0011, 2012 V.I. Supreme LEXIS 10, at *9-10 (V.I. Feb. 9, 2012) (citing *Vazquez v. Vazquez*, 54 V.I. 485, 489-90 (V.I. 2010)). Here, the appellee, Ashley, did not file a brief or take part in the appeal, and accordingly the timeliness concerns have been waived. We do not decide today whether this Court has the authority to enforce the claims processing rule *sua sponte*, because the delay caused by the untimely filing was very brief and, even if we have the discretion to raise timeliness *sua sponte*, we would not do so in this case. *See United States v. Mitchell*, 518 F.3d 740, 744-50 (10th Cir. 2008) (holding that, for the federal claims processing timeliness rules, the court should only raise timeliness sua sponte if the delay was inordinately long or otherwise frustrated the effective administration of justice); *Long v. Atlantic City Police Dept.*, 670 F.3d 436, 445 n.18 (3d Cir. 2012) (tentatively adopting the standard set out in *Mitchell*); *United States v. Gaytan-Garza*, 652 F.3d 680, 681 (6th Cir. 2011) (adopting and using the standard set out in *Mitchell*).

684, 691 (V.I. 2010) (quoting *V.I. Gov't Hosps. & Health Facilities Corp. v. Gov't of the V.I.*, 50 V.I. 276, 279 (V.I. 2008)). Accordingly, the October 18, 2010 divorce decree was a final order over which this Court may exercise jurisdiction. *See Harvey v. Christopher*, 55 V.I. 565, 571 (V.I. 2011).

## III. DISCUSSION

 Chrystalia requests that this Court reverse the divorce decree and reopen the proceedings because, allegedly, she was given insufficient time to retain counsel. However, Chrystalia never argued to the Superior Court that it violated her due process rights by failing to give her sufficient time to retain counsel. Chyrstalia had an opportunity to do so, in her motion to vacate,[5] but failed to raise this issue until on appeal. Generally, we consider all arguments made for the first time on appeal in civil cases as waived unless the party offering the argument presents exceptional circumstances. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 335-36 (V.I. 2007) ("Appellate courts generally refuse to consider issues that are raised for the first time on appeal . . . . Furthermore, on appeal to this Court, the scope of our review is restricted to those questions that were properly preserved for review in the trial court and further raised on appeal according to the rules of this Court.") (citations omitted); V.I.S.CT.R. 4(h) ("Only issues and arguments fairly presented to the Superior Court may be presented for review on appeal; provided, however, that when the interests of justice so require, the Supreme Court may consider and determine any questions not so presented."); V.I.S.CT.R. 22(m) ("Issues that were . . . not raised or objected to before the Superior Court . . . are deemed waived for purposes of appeal, except that the Supreme Court, at its option, may notice an error not presented that affects substantial rights."). Here, Chrystalia has not provided any argument as to why her circumstances are exceptional or why she could not have made this argument before the Superior Court. *St. Thomas-St.*

---

[5] Normally, "it is our policy to 'give[] *pro se* litigants greater leeway' in dealing with matters of procedure and pleading." *Joseph v. Bureau of Corrections*, 54 V.I. 644, 651 (V.I. 2011) (quoting *Dennie v. Swanston*, 51 V.I. 163, 169 (V.I. 2009)). However, at the time the motion to vacate was filed, Chrystalia had retained and was represented by counsel, and thus, despite the fact that Chrystalia appeared *pro se* throughout the bulk of the proceedings below, we are not inclined to provide her with the leeway often offered to *pro se* litigants where her attorney had an opportunity to raise the issue below.

*John Bd. of Elections*, 49 V.I. at 335-36. Therefore, we treat her argument as waived.[6]

■■ However, even if we were to consider the merits of Chrystalia's argument that the Superior Court violated her due process rights under the Fourteenth Amendment by failing to provide her with a sufficient opportunity to retain counsel before entering a final order, we would still affirm the Superior Court's order. In her brief, Chrystalia conflates the right to representation in a criminal, or quasi-criminal, case with representation in a civil case, like this one. *See* 4 V.I.C. § 76(a) (including divorce proceedings in the description of the Superior Court's civil jurisdiction). Almost twenty-five years ago, the Sixth Circuit carefully explained the difference between the two:

> While case law in the area is scarce, the right of a civil litigant to be represented by retained counsel, if desired, is now clearly recognized. *See Goldberg v. Kelly*, 397 U.S. 254, 270-71, 90 S. Ct. 1011, 1021-22, 25 L. Ed. 2d 287 (1970) (welfare recipient must be allowed to retain an attorney at welfare termination hearing if recipient so desires); *Gray v. New England Telephone & Telegraph Co.*, 792 F.2d 251, 256-57 (1st Cir.1986); *Indiana Planned Parenthood Affiliates Assoc. v. Pearson*, 716 F.2d 1127, 1137 (7th Cir.1983); *Potashnick v. Port*

---

[6] We decline to exercise our discretion, in this case, to find that the "waiver of waiver" doctrine applies. As we recently explained, waiver is a judicially created doctrine that can itself be waived if the other party, in this case Ashley, fails to assert the waiver and suffers no prejudice by our reaching the issue. *See Simpson v. Golden*, S. Ct. Civ. No. 2010-0011, 2012 V.I. Supreme LEXIS 10, at *15-17 n.6 (V.I. Feb. 9, 2012) (explaining the doctrine of "waiver of waiver"). Even then, the decision to apply the "waiver of waiver" doctrine is in the sound discretion of this Court. *Id.* Specifically, we noted that it is only appropriate to exercise our discretion under "waiver of waiver" when the appellee " 'suffers no prejudice from [the appellant's] failure to properly raise the issue' " as in a case where the appellee ignores the appellant's waiver and addresses the merits of the appellant's arguments. *Id.* at *16 n.6 (quoting *Singh v. Ashcroft*, 361 F.3d 1152, 1157 n.3 (9th Cir. 2004)). Ashley did not file a brief in this case, and thus did not raise the argument that Chrystalia failed to place her argument before the Superior Court. Nevertheless, we permitted Ashley's attorney to withdraw from this case because Ashley was no longer able to afford his services. If we were to address Chrystalia's argument and reverse, Ashley would suffer the prejudice of having to either defend the action going forward *pro se* or rehire his attorney at significant financial hardship. It is clear to us, therefore, that finding Chrystalia's waiver waived would prejudice Ashley — had Chrystalia raised this issue to the trial court as she is required to by our rules, Ashley's attorney would have been able to respond to it in the course of responding to Chrystalia's many other filings. Accordingly, we decline to exercise our discretion to apply the "waiver of waiver" doctrine.

*City Constr. Co.*, 609 F.2d 1101, 1117-19 (5th Cir.), *cert. denied*, 449 U.S. 820, 101 S. Ct. 78, 66 L. Ed. 2d 22 (1980). Recognition of this right can be traced back to the Supreme Court's holding in *Powell v. Alabama*, 287 U.S. 45, 53 S. Ct. 55, 77 L.Ed. 158 (1932), where the Court held that "[i]f in any case, *civil or criminal*, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense." *Id.* at 69, 53 S. Ct. at 64 (emphasis supplied).

At the outset, the distinction between criminal defendants and civil litigants should be noted. "A criminal defendant's right to counsel arises out of the sixth amendment, and includes the right to appointed counsel when necessary." *Potashnick*, 609 F.2d at 1118. In contrast, "[a] civil litigant's right to retain counsel is rooted in fifth amendment notions of due process; the right does not require the government to provide lawyers for litigants in civil matters." *Id.* Moreover, "[a] criminal defendant faced with a potential loss of his personal liberty has much more at stake than a civil litigant asserting or contesting a claim for damages, and for this reason the law affords greater protection to the criminal defendant's rights." *Id.*

*Anderson v. Sheppard*, 856 F.2d 741, 747-48 (6th Cir. 1988). Consequently, in civil matters the trial court needs only to provide a reasonable opportunity to retain counsel to satisfy due process. *United States v. Michelle's Lounge*, 39 F.3d 684, 698 (7th Cir. 1994); *Gray v. New England Tel. & Tel. Co.*, 792 F.2d 251, 257 (1st Cir. 1986); *United States v. Barrentine*, 591 F.2d 1069, 1075 (5th Cir. 1979). *See also Cavallo v. Star Enterprise*, 153 F.3d 719 (4th Cir. 1998) (unpublished table decision).

█ It is clear that the actions from the Superior Court in this case met the "reasonable opportunity" standard. This case was filed a little over two years before the Superior Court entered an order referring the case to mediation. At no point during that period did Chrystalia seek counsel, or indicate her desire to do so. Chrystalia then had over a year from the referral order until the mediation actually took place to retain counsel, and failed to do so. After signing the Settlement Agreement at mediation and moving for a hearing to challenge the Settlement Agreement, Chrystalia had approximately seven months to retain counsel before the Superior

Court issued an order setting a date for the hearing Chrystalia requested. That order gave the parties approximately two months' notice of the hearing, and Chrystalia still declined to seek an attorney. Even after the hearing where Chrystalia allegedly indicated she would finally seek counsel, she still had nearly six weeks before the Superior Court entered the divorce decree, and again no attorney entered an appearance on her behalf. Chrystalia never filed a motion for a continuance or to stay consideration of the Settlement Agreement while she searched for counsel. According to her motion to vacate, she did not seek an attorney until October 27, 2010, a week and a half *after* the divorce decree was entered. Simply put, Chrystalia had numerous opportunities to retain counsel and failed to take advantage of them. Her due process rights were not violated by the Superior Court.

## IV. CONCLUSION

Chrystalia waived her only argument on appeal by failing to raise it before the Superior Court. Furthermore, even if we were to determine that she did not waive her argument, the Superior Court did not deprive her of her due process right to representation in her divorce proceedings because the court gave her a reasonable opportunity to retain counsel. Accordingly, we affirm the Superior Court's October 18, 2010 divorce decree.