**DALE DUPIGNY, Appellant/Plaintiff**
**v.**
**KAAREN E. TYSON, Appellee/Defendant**

S. Ct. Civil No. 2013-0142
Supreme Court of the Virgin Islands
February 24, 2017

435

YOHANA M. MANNING, ESQ., Manning Legal Services, PC, St. Croix, USVI, *Attorney for Appellant.*

KYE WALKER, ESQ., The Walker Legal Group, St. Croix, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(February 24, 2017)

SWAN, *Associate Justice.* Appellant, Dale Dupigny, seeks reversal of a November 15, 2013 order of the Superior Court of the Virgin Islands

affirming a child support award on writ of review from the Department of Justice's Division of Paternity and Child Support ("PCS"). Dupigny argues that the Superior Court: (1) incorrectly interpreted the definition of income for child support purposes contained in 16 V.I.C. § 341(e) to include a lump-sum personal injury settlement payment and (2) incorrectly concluded that the gross amount (rather than the net amount) of the personal injury settlement payment was income. For the reasons elucidated below, we vacate and remand for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

Dale Dupigny and Kaaren Tyson were married and have four children from their marriage. The divorce decree awarded Tyson legal and physical custody of the couple's four children. PCS determined that Dupigny would pay $580 monthly in child support.

Prior to the divorce, Dupigny was a skilled pipefitter employed by Turner St. Croix Maintenance. In September 2005, as an employee of Turner, Dupigny was on loan to Colt Atlantic Services to repair a leaking valve. While engaged in that assignment, he was injured by an explosion in which he suffered second and third degree burns as well as a head injury. Dupigny filed suit against Colt Atlantic seeking compensation for personal injuries, reimbursement for medical and health care expenses, and compensation for the following: loss of capacity to earn income, disfigurement, scarring, physical and emotional pain and suffering, mental anguish, and loss of enjoyment of life. After recovering, Dupigny returned to work for the duration of his personal injury lawsuit.

In April 2010, Dupigny and Colt Atlantic settled his personal injury claim for $850,000. On June 4, 2010, Tyson filed a request to modify the existing child support order entered by PCS, citing Dupigny's personal injury settlement as the basis for an increase in child support. On September 25, 2012, an administrative hearing was held, and the hearing officer issued an order categorizing Dupigny's settlement as income for purposes of determining child support. Therefore, Tyson was awarded judgment in the amount of $124,928 to be disbursed monthly at $661 and a one-time lump sum payment of $21,152 to liquidate arrears accruing from April 1, 2010, through November 30, 2012. Dupigny filed a petition for a writ of review with the Superior Court. The writ was denied on November 15, 2013, and this timely appeal ensued.

## II. JURISDICTION

This Court has jurisdiction over all appeals arising from a final judgment of the Superior Court. 4 V.I.C. § 32(a). A final order is a judgment from a court which ends the litigation on the merits, leaving nothing else for the court to do except execute the judgment. *Ramirez v. People*, 56 V.I. 409, 416 (V.I. 2012). Therefore, this Court has jurisdiction to hear this appeal, which was timely filed on December 16, 2013.

## III. STANDARD OF REVIEW

The trial court's construction of a statute is subject to plenary review. *Bradford v. Cramer*, 54 V.I. 669, 672 (V.I. 2011). The standard of review for this Court's examination of the trial court's application of the law is plenary, and its findings of fact are reviewed for clear error. *Rodriguez v. Bureau of Corr.*, 58 V.I. 367, 371 (V.I. 2013), *overruled in part on other grounds by Mosby v. Mullgrav*, 65 V.I. 261, 265-267 (V.I. 2016); *Blyden v. People*, 53 V.I. 637, 646 (V.I. 2010).

## IV. DISCUSSION

### A. Despite Being Waived, Dupigny's Arguments Will Nevertheless Be Considered on Appeal Because Tyson Will Suffer No Resulting Injustice or Prejudice.

█ This Court will not consider an argument raised for the first time on appeal or an argument that is raised below, but not asserted on appeal, absent exceptional circumstances. V.I.S.CT.R. 4(h); V.I.S.CT.R. 22(m); *Madir v. Daniel*, 53 V.I. 623, 634-35 (V.I. 2010); *see Anthony v. FirstBank V.I.*, 58 V.I. 224, 233 n.11 (V.I. 2013). In this case, Dupigny argued below that his personal injury settlement proceeds are not "income" under title 16, section 341(e) because they are excluded as "amounts exempted by federal law" under section 341(e)(3), whereas on appeal, he argues that his proceeds are not "income" because he received them in a single lump sum, not as a form of "periodic payment." Notwithstanding Dupigny's failure to properly preserve his initial argument (by abandoning it on appeal) and his belated assertion of the latter argument, we are reluctant to strictly apply waiver under the circumstances presented in this case because to do so, "especially in an unsettled and ever-changing area[,] . . . may unfairly and unjustifiably affect the disposition of other cases[.]" *V.I. Narcotics Strike Force v. Pub.*

439

*Emps. Relations Bd.*, 60 V.I. 204, 211 (V.I. 2013) (quoting *Garcia v. Garcia*, 59 V.I. 758, 774 (V.I. 2013)); *Murrell v. People*, 54 V.I. 338, 348 (V.I. 2010). Tyson would suffer absolutely no prejudice by our review of the issues not presented to the Superior Court because, in her Reply Brief, Tyson has fully briefed both issues raised by Dupigny. *See Etienne v. Etienne*, 56 V.I. 686, 692 n.6 (V.I. 2012). We will, therefore, exercise our discretion to consider each issue presented.

## B. The Language of 16 V.I.C. § 341(e) Includes a Lump-sum Payment Made Pursuant to a Settlement Agreement Terminating a Civil Lawsuit.

■ The first canon of statutory interpretation states that, if the language of a statute is clear and unambiguous, no further analysis is required in order to discern the meaning of that language. *Brady v. Government of the V.I.*, 57 V.I. 433, 441 (V.I. 2012); *Shoy v. People*, 55 V.I. 919, 926 (V.I. 2011); *see also United States v. Wells*, 519 U.S. 482, 498-99, 117 S. Ct. 921, 137 L. Ed. 2d 107 (1997); *United States v. Lanier*, 520 U.S. 259, 265 n.5, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997). All the statutory language must be given effect when doing so does not undermine the legislative intent. *Gilbert v. People*, 52 V.I. 350, 356 (V.I. 2009); *see also In re Visteon Corp.*, 612 F.3d 210, 226 (3d Cir. 2010). Interpretations that are unjust or lead to absurd results must be avoided because they are inconsistent with legislative intent. *Gilbert*, 52 V.I. at 356; *United States v. Ron Pair Enters.*, 489 U.S. 235, 242, 109 S. Ct. 1026, 103 L. Ed. 2d 290 (1989) (noting that an interpretation that "will produce a result demonstrably at odd with the intentions of its drafters' " is inappropriate (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S. Ct. 3245, 73 L. Ed. 2d 973 (1982))). An interpretation that renders a statute nonsensical or superfluous, or that defies rationality, is absurd. *United States v. Fontaine*, 697 F.3d 221, 228, 57 V.I. 914 (3d Cir. 2012). When interpreting a statute, "the court must look to the statute's language, structure, subject matter, context, and history — factors that typically help courts determine the statute's objectives and thereby illuminate its text." *See Almendarez-Torres v. United States*, 523 U.S. 224, 228, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998) (citations omitted).

### 1. The Superior Court Correctly Interpreted the Virgin Islands Code's Definition of a Parent's Income for Child Support Purposes.

Section 341(e) of title 16 of the Virgin Islands code reads, in pertinent part:

> (e) "income" means **any form of periodic payment to an individual, regardless of source**, including, but not limited to, wages, salary, bonuses, commissions, compensation as an independent contractor, workers' compensation administration, disability, unemployment compensation, annuity and retirement benefits, **awards in civil suits**, interest, dividends, rents, royalties, insurance proceeds, trust income, partnership profits, and any other payments made by any person, private entity, federal, state or territorial government or any entity created by local law including prizes from games of chance; provided, however, that income excludes:
>
> . . . .
>
> (3) any amounts exempted by federal law . . . .

16 V.I.C. § 341(e) (emphasis added). Under subsection 341(e), "income" for the purposes of calculating child support is defined as "any form of periodic payment to an individual, regardless of source . . . ." *Id.* A "payment" is "[t]he act of paying" or "an amount paid." COMPACT AM. DICTIONARY: A CONCISE DICTIONARY OF AM. ENGLISH 610 (1998). "Periodic" is an adjective used to describe something "[h]aving or marked by repeated cycles" or "[h]appening or appearing at regular intervals." *Id.* at 617. Irrefutably, the statute is internally contradictory. The primary definition includes language that would appear to limit income to only those payments that occur in a cyclical manner. *See Municipality of Anchorage v. Adamson*, 301 P.3d 569, 576 (Alaska 2013) ("Periodic payment is defined as [o]ne of a series of payments made over time instead of a one-time payment for the full amount; it is contrasted with lump-sum payment, which is defined as [a] payment of a large amount all at once, as opposed to a series of smaller payments over time." (citation and internal quotation marks omitted)). However, the statute then continues on to list examples of income from various sources. In this listing, payments from games of chance, bonuses, commissions, compensation as an independent contractor, awards in civil suits, and trust income, all of which are payments that could occur either periodically or only once, are included.

441

There is nothing of material significance, for child support purposes, to distinguish the income of an independent contractor who gets paid once at the end of a contract versus an independent contractor who receives installment payments throughout the duration of a contract. Both are income payments meant to compensate the contractor and represent primary income. Under Dupigny's view, a parent wishing to avoid any child support obligation need only write his contract so that he gets paid once instead of two or more times, and suddenly his sole source of income becomes "not income" for child support purposes. However, it is unmistakable that the Legislature, in adroitly crafting the language of 16 V.I.C. § 341(e), could not have intended to create such an arbitrary distinction concerning income that is subject to child support obligations.

Typically, payments from games of chance are one-time payments, as are payments from civil lawsuits. The inclusion of these classifications of payments in the listing of examples of "any form of periodic payment" confirms that the Legislature intended to include within the definition the specific enumerated sources and sources of a similar nature. 16 V.I.C. § 341(e) ("including, but not limited to . . . ."). Similarly, many of the listed payments, though typically periodic, are very frequently one-time payments. For example, a one-year lease could have a one-time payment at the beginning. Workers' compensation, disability, and unemployment compensation very frequently take a significant number of years to be approved resulting in a large, lump-sum retroactive payment with a schedule of separate future payments. The retroactive payment, not being periodic in its occurrence, would arguably not be income, even though it would have been income if it had been approved in a timely manner and paid immediately. Such internally arbitrary results could not have been the intention of the definition of "income" for child support purposes.

■ Further, the entire purpose of the Virgin Islands' child support statutes is to ensure that children of parents who are divorced are cared for with both parents bearing their proportionate share of the costs. 16 V.I.C. §§ 344(a), 345(c); see 16 V.I.C. § 109(a)(1). Subsection 345(a) of title 16 even excepts "support due to or on behalf of a child or children" from being "proportioned to the resources of the person giving such support." 16 V.I.C. § 345(a); see also 16 V.I.C. § 344(a), (b). While we recognize this is an appeal with jurisdiction in the Superior Court's Family Division premised on 16 V.I.C. § 354(b), the Virgin Islands Legislature was primarily concerned with the best interests of the child and premised the

Superior Court's general jurisdiction in child support and custody on this principle. 16 V.I.C. § 109(a)(1); *Madir v. Daniel*, 53 V.I. 623, 631 (V.I. 2010).

 Support is also found in Illinois. *See Ottley v. Estate of Bell*, 61 V.I. 480, 494 n.10 (V.I. 2014) ("When statutes from other jurisdictions are substantially similar to a Virgin Islands statute, this Court may look for guidance at how that jurisdiction's courts have interpreted the similar statute." (citations omitted)). Like the Virgin Islands, Illinois has a support statute that defines "income" as "any form of periodic payment to an individual, regardless of source." 750 ILL.COMP. STAT. 5/505(a)(3). The Illinois Court of Appeals has held that a lump sum payment falls within this statutory definition. *See In re Marriage of Dodds*, 222 Ill. App. 3d 99, 583 N.E.2d 608, 611, 164 Ill. Dec. 692 (Ill. Ct. App. 2001) ("lump sum" injury compensation award is within the term "any form of periodic payment to an individual").

Dupigny's argument is absurd, and the Court would have difficulty in finding an interpretation that is more manifestly not in the best interests of any child, which is the overarching legislative intent of all of the provisions of the Virgin Islands Code relating to child support. It is inconceivable that the Legislature, after an exhaustive effort to provide comprehensive child support guidelines, would leave such an enormous loophole that could be used to skirt those guidelines. To adopt the arbitrary distinction of income based on periodic payments versus lump sum payments in the face of specifically enumerated sources of income within the statutory definition would significantly undermine the plain legislative intent of the Virgin Islands child support statutes.

 Dupigny advances the argument that the "amounts exempted by federal law" exclusion to "income" in title 16, section 341(e)(3) incorporates the definition of taxable income contained within the Internal Revenue Code, 26 U.S.C. § 104, thereby precluding the inclusion of a personal injury settlement payment within the definition of income provided for in 16 V.I.C. § 341(e). The Superior Court found that using the Internal Revenue Code in the determination of child support payments "would exceed the prudent bounds of statutory interpretation." We agree. "In this jurisdiction, a court *must* follow the Child Support Guidelines in all proceedings containing an action for child support." *Bradford*, 54 V.I. at 674(emphasis added). Dupigny fails to substantiate that the Legislature intended to go beyond the definition of income found in title 16 of the

Virgin Islands Code and apply the Internal Revenue Code's definition of income when determining a parent's child support obligation. Further, title 26 of the United States Code involves income for payment of federal income tax, *see generally* U.S. CONST. amend. XXVI; whereas title 16 of the Virgin Islands Code involves income for the purpose of child support. It is noteworthy that 26 U.S.C. § 104 is anchored in the Internal Revenue Code and addresses income for federal tax purposes — not income for child support purposes. *See In re Alter*, 171 Cal. App. 4th 718, 89 Cal. Rptr. 3d 849, 862 (Cal. Ct. App. 2009) (explaining that "[t]he Internal Revenue Code does not so much define the term 'income' [in the context of child support] as identify that which, consistent with prevailing federal tax policy, might be taxed" (citation omitted)); *In re Rogers*, 213 Ill. 2d 129, 820 N.E.2d 386, 390, 289 Ill. Dec. 610 (Ill. 2004) ("[T]he Internal Revenue Code is designed to achieve different purposes than our state's child support provisions." (citation omitted)); *Darby v. Darby*, 455 Pa. Super. 63, 686 A.2d 1346, 1349 (Pa. Super. Ct. 1996) ("Tax law contains many preferences and definitions for fiscal and other purposes which have no relationship to support.").

█ Taking the context and structure of section 341 as a whole and specifically subsection (e)(3), it is obvious that the Virgin Islands Legislature did not intend to adopt the Internal Revenue Code's definition of income. In 1986, the Legislature codified its definition of "income" for purposes of calculating child support payments, including its exclusion for "any amounts exempted by federal law" under section 341. Act No. 5161, § 10 (V.I. Reg. Sess. 1986), *amended in part by* Act No. 6033, § 2 (V.I. Reg. Sess. 1994) (replacing "workmen's compensation" with "workers' compensation administration"), *and* Act No. 6589, § 4 (V.I. Reg. Sess. 2003) (adding "including prizes from games of chance"). Since that time, the Legislature has amended other aspects of section 341 by adding explicit references to the Internal Revenue Code, Act No. 6228, § 5 (V.I. Reg. Sess. 1998) (adding subsections 341(o) and 341(p), which respectively define "employee" and "employer" consistent with the "Internal Revenue Code"), but has declined to do so either within its definition of "income" under subsection (e) or its "federal law" exemption under subsection (e)(3). *Cf. In re Holcombe*, 63 V.I. 800, 836 (V.I. 2015) (explaining that "[h]ad the Legislature intended to subject all private attorneys to [involuntary] appointments, it could have easily used a phrase to that effect . . . . [and] [i]n fact, other statutes passed by the Legislature

use such . . . language" (citations omitted)); *Hamed v. Hamed*, 63 V.I. 529, 540 (V.I. 2015) (explaining that "had the Legislature intended the lack of a license to render a marriage invalid, it could easily have stated that 'no marriage shall be valid' unless a license was first obtained"). Instead, the Legislature has continued to define income in a manner broader than the Internal Revenue Code. For example, section 341(e)'s definition of income includes payments arising from the "workers' compensation administration," whereas the Internal Revenue Code excludes "amounts received under the workmen's compensation acts as compensation for personal injuries or sickness." 26 U.S.C. § 104(a)(1); *see In re Alter*, 89 Cal. Rptr. 3d at 862 (explaining that the inclusion of "workers' compensation benefits" as "income" under CAL. FAM. CODE § 4058(a)(1) was inconsistent with the Internal Revenue Code); *see generally Stuart v. Stuart*, 99 Ark. App. 358, 260 S.W.3d 740, 743 (Ark. Ct. App. 2007) (explaining that a definition of "income" that includes in part "worker's compensation [and] disability" was "no longer tied to the federal tax code" because it was intentionally broadened).

Moreover, in identifying exclusions to income, the Legislature chose to include "public assistance payments" and "any amounts exempted by federal law" as distinct exclusion categories. 16 V.I.C. § 341(e)(3)-(4). Had the Legislature intended to adopt the Internal Revenue Code's definition of income, it would not have needed a distinct exclusion category for "public assistance payments" because such payments have long been considered excluded from income under the Internal Revenue Code. *See Bannon v. C.I.R.*, 99 T.C. 59, 99 T.C. 60, 62 (1992) (explaining that "[alt]hough no statutory exclusion for a welfare benefit appears in the Internal Revenue Code, . . . [the Commissioner of Internal Revenue] has consistently taken the position . . . that government disbursements promoting the general welfare are not taxable. . . . [and t]his Court has acknowledged the existence of the 'general welfare doctrine' of income exclusion" (collecting revenue rulings)); *Graff v. Comm'r*, 673 F.2d 784, 785 (5th Cir. 1982) (explaining that section 235 HUD mortgage payments on behalf of low and moderate income families are "direct general welfare benefits not taxable").[1]

---

[1] *See also* Rev. Rul. 98-19, 1998-1 C.B. 840 (government payments made to assist flood victims with relocation are not income); Rev. Rul. 78-170, 1978-1 C.B. 24 (government

■ In light of the differing policy rationales behind taxation and child support and the Legislature's inclusion of terms that would become superfluous with an adoption of the Internal Revenue Code's definition of taxable income, we agree with the Superior Court and hold that title 16, section 341(e)(3)'s "federal law" exclusion does not incorporate the Internal Revenue Code's definition of income, which excludes a payment arising from a personal injury lawsuit. By way of illustration, under Dupigny's interpretation of subsection 341(e)(3) of title 28, if a parent is awarded a multi-million dollar personal injury judgment, the entire judgment is exempt from any child support obligation, even when the custodial parent or guardian is struggling to support the same children with the paltry and meager public assistance the custodial parent or guardian may receive. Furthermore, under Dupigny's interpretation, the parent with significantly and substantially greater financial resources, i.e., the personal injury judgment, receives the proverbial "free pass" to the detriment of hapless children, which makes a mockery of all parents' legal obligation to support their children. Ergo, where is the justice and fairness to the children who are the beneficiaries of child support?

■ ■ Instead of looking to the Internal Revenue Code, we consider it more appropriate to interpret section 341(e)(3)'s exclusion by looking to that "federal law" addressing income in the context of child support explicitly referenced within title 16, section 341: the Child Support Enforcement Act ("CSE"), 42 U.S.C. §§ 651-669b, which is "incorporated into the Social Security Act as 'Title IV-D.'" *Pennsylvania Dep't of Pub. Welfare v. U.S. Dep't of Health & Human Servs.*, 80 F.3d 796, 799 (3d Cir. 1996); *see* 16 V.I.C. § 341(a), (c), (k) (referencing "Title IV-D"); Act No. 5160 (V.I. Reg. Sess. 1986) ("To Further Amend Title[] . . . 16 . . . To Incorporate Into the Code the Applicable Provisions of [the 1984 amendment to the CSE], and for Other Purposes Related Thereto."); Act

---

payments to assist low-income persons with utility costs are not income); Rev. Rul. 76-395, 1976-2 C.B. 16, 17 (government grants to assist low-income city inhabitants to refurbish homes are not income); Rev. Rul. 76-144, 1976-1 C.B. 17 (government grants to assist disaster victims are not income); Rev. Rul. 75-271, 1975-2 C.B. 23 (government payments to assist low-income families with home purchases are not income); Rev. Rul. 74-153, 1974-1 C.B. 20 (government payments to assist adoptive parents with support and maintenance of adoptive children are not income); Rev. Rul. 63-136, 1963-2 C.B. 19 (government payments made for certain employment training or retraining are not income); Rev. Rul. 74-74, 1974-1 C.B. 18 (awards to crime victims and their dependents are not income); Rev. Rul. 57-102, 1957-1 C.B. 26 (government payments to the blind are not income).

No. 6228 (V.I. Reg. Sess. 1998) ("To amend the Virgin Islands Code to enact federal requirements applicable to [the] . . . [CSE] programs, as mandated by the [1996 amendment to the CSE]."); *Engeman v. Engeman*, 64 V.I. 669, 676 (V.I. 2016) (explaining that title 16, section 345 was "enacted as a condition of federal funding"). As explained by the Third Circuit,

> Under Title IV-D, the federal government provides funding . . . to participating states to assist in obtaining and enforcing child . . . support obligations, locating absent parents, and establishing paternity. . . . In order to participate in the Child Support Enforcement program, each state must submit a plan for . . . approval in which the state designates the specific organizational unit or agency responsible for administering the program — i.e. "the IV-D agency." The plan must provide, *inter alia*, that the state will undertake, when necessary, . . . to collect financial support for children through various means, such as wage withholding, property liens, withholding of unemployment compensation, and interception of tax refunds.

*Pennsylvania Dep't of Pub. Welfare*, 80 F.3d at 799 (citations omitted); *see generally Doucette v. Ives*, 947 F.2d 21, 24 (1st Cir. 1991) (explaining that the "CSE program is designed to both assist parents in collecting child support . . . and to reduce state and federal government [aid] expenditures, which are often necessitated by the failure of noncustodial parents to meet their support obligations").

██ The Secretary of Health and Human Services oversees the development of state plans, evaluates their implementation, and provides technical assistance. *In re Leibowitz*, 217 F.3d 799, 804 (9th Cir. 2000). In exercising its authority, the Secretary has long required state plans to define income broadly. *See* 45 C.F.R. § 302.56(c) (2017) ("The child support guidelines established under . . . this section must at a minimum . . . provide that the child support order is based on the noncustodial parent's earnings, income, and other evidence of ability to pay that . . . include[s] such factors as the noncustodial parent's assets, residence, employment and earning history, job skills, educational attainment, job skills, educational attainment . . . ."); 45 C.F.R. § 302.53 (1991) ("All earnings, income and resources of the absent parent including real and personal property[,] . . . [t]he earnings potential of the absent parent[,] . . . [and t]he ability of the absent parent to borrow[.]"),

*renumbered and amended by* 45 C.F.R. § 302.56(c). Nonetheless, the Secretary has also placed restrictions — albeit limited ones — on its definition of income, including for example, its most recently enacted requirement that each state's plan "[t]ake into consideration the basic subsistence needs of the noncustodial parent." 45 C.F.R. § 302.56(c) (2017) (emphasis added); *accord* 45 C.F.R. § 302.53 (1991) ("The formula . . . must take into consideration . . ." [t]he reasonable necessities of the absent parent), *renumbered and amended by* 45 C.F.R. § 302.56(c); *cf.* 29 U.S.C. § 1056(d)(3) (authorizing the "assignment or alienation" of certain federal pension benefits if an order is a "qualified domestic relations order"). The Secretary, however, has not excluded "public assistance payments" from its definition of income.

▇ Unlike in the Internal Revenue Code, there is no clear consensus that the CSE (or other relevant federal law) excludes all such payments from consideration as income in child support calculations. *Compare, e.g., Commonwealth ex rel. Morris v. Morris*, 984 S.W.2d 840, 841-42, 45 12 Ky. L. Summary 19 (Ky. 1998) (explaining that federal law does not preclude the state from including Supplemental Security Income ("SSI") payments within a child support payment calculation), *and Whitmore v. Kenney*, 426 Pa. Super. 233, 626 A.2d 1180, 1185 (Pa. Super. Ct. 1993) (same, but where noncustodial parent had "the ability to pay and did not object"), *with Burns v. Edwards*, 367 N.J. Super. 29, 842 A.2d 186, 193-96 (N.J. Super. Ct. App. Div. 2004) (explaining that federal law does preclude the state from including SSI payments within a child support payment calculation), *and Reyes v. Gonzales*, 22 S.W.3d 516, 519-20 (Tex. App. 2000) (same). Therefore, because relevant "federal law" does not bar consideration of personal injury payments in child support calculations, the Superior Court did not err when it determined that a lump sum personal injury payment was encompassed within the definition of income for child support determinations, as defined in subsection 341(e) of title 16 of the Virgin Islands Code.

## 2. The Superior Court Abused its Discretion When it Determined that the Gross Proceeds of the Personal Injury Settlement are Income Without Also Considering Whether Such Inclusion Would Operate as a Hardship Warranting a Departure from the Virgin Islands Child Support Guidelines.

▇ Dupigny asserts that "the monetary compensation for personal injuries that he received is merely an exchange of one resource, a whole

and healthy body, for another." He further argues that the definition of income mandates that there is a gain or profit and his payment was not a gain but rather to make him whole. Dupigny's interpretation of "income" under the statute is unpersuasive. Dupigny received a personal injury settlement from Colt Atlantic for injuries that he sustained while working for that company in 2005. The gross settlement was $850,000. The unambiguous inclusion of "awards in civil suits" in 16 V.I.C. § 341(e) undoubtedly includes Dupigny's personal injury settlement. *See* 16 V.I.C. § 341(e) ("including, **but not limited to** . . . ." (emphasis added)); *see Inniss v. Inniss*, 65 V.I. 270, 288 n.19 (V.I. Aug. 18, 2016) (noting in the context of a marital property division that there is no difference between a personal injury jury award and a personal injury settlement payment).

■■ Dupigny's argument classifying a personal injury settlement as compensation and not income has previously been determined to lack merit by the United States Supreme Court. In *Lukhard v. Reed*, 481 U.S. 368, 381, 107 S. Ct. 1807, 95 L. Ed. 2d 328 (1987), the Court stated, in reviewing state provisions dealing, *inter alia*, with assets cognizable in considering support owed to dependent children: "personal injury awards are almost entirely a gain in well-being . . ., and can reasonably be treated as income." The Court also stated that "the premise that personal injury awards cannot involve gain is obviously false, since they often are intended in significant part to compensate for the loss of gain, e.g., lost wages." *Id.* at 375. As part of Dupigny's lawsuit against Colt Atlantic, among his multiple claims, he did claim loss of capacity to earn income.

■■ Furthermore, Dupigny's personal injury settlement is income that should have been considered in modifying the child support order. The Virgin Islands Code indisputably states that the list of income resources is not all inclusive, and, as stated above, Dupigny's personal injury settlement is a resource type that is listed in section 341(e). Moreover, the language, "awards in civil suits," is without any limitations or qualifications. For example, it is not referred to as the "net award" or modified by the word "net." Similarly, no language such as "award after payment of medical expenses" or any other language indicating any amount other than the gross amount of the award is to be used as the basis for the child support calculation. This contention is consistent with the statutory purpose of child support obligations, which is to ensure that those with moral and legal obligations to support their children do, in fact, provide for their children. The Superior Court, therefore, did not err when

it determined that the gross amount of Dupigny's settlement payment from his personal injury lawsuit should be considered as income within the child support guidelines. *See* 16 V.I.C. § 341(e) (explaining that the child support guidelines incorporate title 16, section 341's definition of "income").

▮▮ Even though Dupigny's settlement payment is "income" under the guidelines, those guidelines can be "modified or disregarded if it is determined that injustice would result," provided that such a determination is "based on criteria taking into consideration the best interests of the child (children)." *Id.* In title 16, section 345-06 of the Virgin Islands Rules and Regulations, the Virgin Islands Attorney General exercised its regulatory authority and issued criteria to be considered in rebutting the presumption, stated in 16 V.I.C. § 345(b), that the child support guidelines prescribe the appropriate amount of support in each case, as we recently reaffirmed in *Engeman*, 64 V.I. at 675-76. In relevant part, those criteria state that,

> The Guidelines . . . may be disregarded if it is determined that injustice would result from the application thereof. . . . One or more of the following considerations and factors may constitute the basis for a variance from the Guidelines:
>
> . . . .
>
> > e. The Court or Administrative Hearing Officer enters significant, valid and specific findings of fact based on individual case circumstances which require a conclusion that (1) application of the guidelines would be **unjust** or inappropriate; and
> >
> > (2) deviation from guidelines would not be inconsistent with the **best interests of the child(ren).**

16 V.I. R. & R. § 345-06 (emphasis added). Under these criteria, deviation from the guidelines because of a personal injury settlement may be both necessary to avoid injustice and in the best interests of the child. Missouri, like the Virgin Islands, authorizes deviation from its child support guidelines when application would be "unjust or inappropriate." *See* Mo. Rev. Stat. § 452.340(9) (2016) ("A written finding or specific finding . . . that the application of the guidelines would be unjust or inappropriate in a particular case . . . shall be sufficient to rebut the [guideline] presumption[.]"). As explained in

*Taranto v. State Dep't of Soc. Servs.*, 962 S.W.2d 897 (Mo. Ct. App. 1998),

> unfairness could result if the court considers 100% of personal injury settlement payments in determining a parent's child support obligations. . . . [I]n many cases a part of those payments is intended to reimburse the recipient not just for lost income, but also for past and future medical expenses and pain and suffering. If these payments are all included in gross income and must be used to pay child support, then the recipient may not have sufficient money left to pay future medical expenses.
>
> . . . .
>
> Missouri law specifically gives a court discretion to find the [Guideline] amount "**unjust** and inappropriate" and to adjust it upward to downward as circumstances dictate. . . . While the [court was] required to include [the personal injury settlement] in gross income, [it] should also have considered whether the resulting child support payment was unjust and inappropriate . . . . In making this determin[ation,] the [court] . . . should consider whether some or all of [petitioner's settlement is] intended to pay for medical expenses . . . and if . . . the amount of child support otherwise payable under [the Guideline] is unjust or inappropriate[.]

*Id.* at 901-03 (emphasis added). A number of other jurisdictions, when interpreting similar deviation provisions, have held that it would be either "unjust" or "inappropriate" to include a personal injury settlement relating to medical expenses in calculating child support payments. *See Gallegos v. Gallegos*, 174 Ariz. 18, 846 P.2d 831, 834-35 (Ariz. Ct. App. 1992) (explaining that it would be "inappropriate or unjust to follow the guidelines" where "[t]he amount [the personal injury recipient] received . . . was to reimburse him for the extraordinary expenses he would incur to maintain an appropriate level of functioning during his lifetime. . . . [including his] necessary medical, drug and special care expenses"); *In re Durbin*, 251 Mont. 51, 823 P.2d 243, 249 (Mont. 1991) (explaining that applying the guidelines would yield "an inappropriate result" if the court "consider[ed] all [of the noncustodial parent's] personal injury awards without considering [his or her] actual and necessary needs including those resulting from his [injury]"), *abrogated on other grounds by In re Marriage of Kovash*, 270 Mont. 517, 893 P.2d 860 (Mont. 1991), *and In re Marriage of Cowan*, 279 Mont. 491, 928 P.2d 214 (Mont. 1996); *cf. In re Marriage of Fain*, 794 P.2d 1086,

1088 (Colo. Ct. App. 1990) (explaining that although a noncustodial parent's personal injury settlement payments constituted income under state guidelines, the court could "deviate from th[ose] guideline after consideration of [the noncustodial parent's] ability to meet his medical expenses" (citation omitted)); *Sommer v. Sommer*, 108 Wis. 2d 586, 323 N.W.2d 144, 147 (Wis. Ct. App. 1982) (explaining that "in order to do justice to both the . . . parent and to the children," the court must consider whether the personal injury settlement "is merely repaying the victim for the actual economic impairment").

Consistent with this reasoning, we agree that it would be both unjust and contrary to the best interests of the child for the court to include the gross amount of a personal injury settlement as "income" for purposes of child support, without considering the purposes for which it was intended to compensate and whether such inclusion of the gross amount would operate a hardship upon the non-custodial parent. Both the child and the injured parent benefit when the injured parent is able to maintain an appropriate level of functioning resulting from his or her access to necessary medical, drug, and special care. *Cf. In re Alter*, 171 Cal. App. 4th 718, 89 Cal. Rptr. 3d 849, 858 (Cal. Ct. App. 2009) (explaining that where"[a] serious accident [or] catastrophic illness" has occurred, "it would not be in the child's best interest to force the parent into a level of debt he or she has no ability to pay"). Therefore, because it is not apparent from the record whether the Superior Court (or PCS) considered deviating from the guidelines under title 16, section 345(c), we vacate the Superior Court's November 15, 2013 order and remand this matter to the Superior Court so that it may vacate the PCS's November 1, 2012 order and remand to the PCS for written findings under section 345(c) addressing whether the whole of Dupigny's personal injury settlement should be subject to his child support obligations after considering if this would work a hardship warranting a departure from the guidelines.[2]

---

[2] We recognize that, in this case, PCS ordered Dupigny to pay in advance lump-sum child support in the amount of $124,928, which the PCS would then distribute monthly to Tyson. Because Dupigny has failed to challenge in his appellate brief: (1) the authority of PCS to order that lump-sum child support be paid in advance, or (2) the apparent failure of PCS to reduce the lump-sum child support to its present value, we decline to address those issues on appeal. See V.I.S.Ct.R. 22(m). However, our failure to consider these issues as part of this appeal should not preclude the Superior Court from addressing these issues on remand, should it be presented with an appropriate motion.

## V. CONCLUSION

■ Because an interpretation of the definition of income for purposes of calculation of child support obligations that is limited to only payments made in periodic installments would undermine the legislative intent of the Virgin Islands child support statutes and would not be an interpretation of section 341(e) of title 16 of the Virgin Islands Code that promotes the best interests of the children of the Territory, as well as the manifest legislative intent underlying the entire child support statutory scheme, the Superior Court was correct when it concluded that a personal injury settlement payment is income for child support purposes. Further, because the definition of income in the federal tax code is addressed to a different purpose, i.e., generation of revenue for the operation of the federal government, and section 341 of title 16 of the Virgin Islands Code addresses income for the purpose of determining a parent's obligation to support his or her children, the Superior Court correctly rejected Dupingy's interpretation that adopted the federal income tax definition of income. Finally, although the definition of income for child support purposes specifically lists "awards in civil suits," the Superior Court abused its discretion when it determined that the gross proceeds of Dupigny's personal injury settlement were income under section 341(e) of title 16 without also considering if the inclusion of the total settlement proceeds would work a hardship, as required by section 345(c). Therefore, the Superior Court's November 15, 2013 order is affirmed in part and reversed in part, and the matter remanded for further proceedings consistent with this opinion.