

**FILED**
March 24, 2026 02:34 PM
SX-2021-CV-00548
TAMARA CHARLES
CLERK OF THE COURT

## IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| MILTON BURT, | |
| **Plaintiff,** | **CASE NO: SX-2021-CV-548** |
| **v.** | |
| LOCKHEED MARTIN CORP., ET. AL., | |
| **Defendants.** | |

**Cite as: 2026 VI Super 12P (Published)**

**Appearances:**

**J. Russell Pate, Esq.**
The Pate Law Firm
PO Box 890
St. Thomas, VI 00804
*For Plaintiffs*

**Warren T. Burns, Esq., Korey A. Nelson, Esq., Daniel H. Charest, Esq., Rick Yelton, Esq., and Chase Charbonnet, Esq.**
Burns Charest, LLP
900 Jackson Street, Ste. 500
Dallas, TX 75202
*For Plaintiffs*

**Arthur Murray, Esq., Stephen Murray, Esq.**
The Murray Law Firm
Hancock Whitney Center
*701 Poydras Street, Ste. 4250*
New Orleans, LA 70139
*For Plaintiffs*

**Ryan Stutzman, Esq.**
CSA Associates, P.C.
1138 King Street, Ste. 100
Christiansted, VI 00820
*For Defendant Virgin Islands Industrial Maintenance Corporation*

**Matthew R. Thibodeau, Esq.**
800 Londsdale Building.
302 West Superior St.
Duluth, MN 55802
*For Defendant Virgin Islands Industrial Maintenance Corporation*

**MEMORANDUM OPINION**
**(Filed March 23, 2026)**

**Andrews, Jr.,** *Judge*

**INTRODUCTION**

¶1     Plaintiff, a former worker at the Martin Marietta Alumina Refinery (the Refinery) in St. Croix, Virgin Islands, brings this action for damages against Lockheed Martin Corporation (LMC), the successor-in-interest to prior Refinery owners.   He alleges, during his employment, LMC's predecessors negligently exposed him to toxic substances which later caused him to suffer from pneumoconiosis, a lung disease.   LMC raises the Virgin Islands Workers' Compensation Act (WCA) as an affirmative defense to Plaintiff's claims.   Plaintiff now seeks a judgment dismissing or striking LMC's defense contending, among other things, that: 1) the WCA is inapplicable to former employees claiming latent injuries; and 2) LMC has failed to establish it had insurance coverage under the

WCA during the relevant period. For the reasons mentioned herein, the Court strikes LMC's affirmative defense based on Plaintiff's contentions.

## FACTUAL BACKGROUND[1]

¶4 Plaintiff, Milton Burt, worked at the Refinery as a maintenance worker from 1967 to 1995. Pl.'s Substituted Mot. for Summ. J.; Undisputed Statement of Facts 2; LMC's Resp. to Pl.'s Undisputed Statement of Facts in Substituted Mot. for Summ. J. 1:1; LMC's Statement of Undisputed Facts re Cross Mot. for Summ. J. 3:8. Martin Marietta Aluminum, Inc. owned the Refinery from 1970 to 1985, and Martin Marietta Aluminum Properties, Inc. owned it from 1985 to 1989. LMC's Statement of Undisputed Facts re Cross Mot. for Summ. J. 3:8. Plaintiff worked for Martin Marietta Aluminum, Inc. from 1970 to 1984 and for Martin Marietta Aluminum Properties, Inc. in 1985.[2] LMC's Resp. to Pl.'s Undisputed Statement of Facts in Substituted Mot. for Summ. J. 1:1; LMC's Statement of Undisputed Facts re Cross Mot. for Summ. J. 2:5. Martin Marietta Aluminum Properties, Inc. sold the plant to Virgin Islands Alumina, Inc. in 1989. LMC's Resp. to Pl.'s Undisputed Statement of Facts in Substituted Mot. for Summ. J. 2:3. Plaintiff asserts he continued working at the Alumina Plant until 1995. Pl.'s Statement of

---

[1] The pertinent facts are not in dispute. They are derived from unrebutted Complaint allegations and uncontested assertions in the parties' statements of undisputed facts.

[2] Plaintiff did not address this specific assertion by LMC. The Court thus considers it as undisputed. V.I.R. Civ. P. 56(e).

Undisputed Facts in Support of Substituted Mot. for Summ. J. 2:1.

Defendant LMC is the successor-in-interest to Martin Marietta Corporation, Martin Marietta Aluminum, Inc., and Martin Marietta Aluminum Properties Inc. as of 1995. LMC's Statement of Undisputed Facts re Cross Mot. for Summ. J. 3:10; Pl.'s Statement of Undisputed Facts in Support of Substituted Mot. for Summ. J. 2:3. Martin Marietta Corporation was the parent entity to Martin Marietta Aluminum, Inc. and Martin Marietta Aluminum Properties, Inc. LMC's Statement of Undisputed Facts re Cross Mot. for Summ. J. 3:9.

In his complaint, Plaintiff alleges he was exposed to bauxite ore and other allegedly toxic dust during the course of his employment at the Alumina Plant. Complaint at 9. He claims that, as a result of such exposure, he suffers from pneumoconiosis which became evident on July 21, 2019. Id. at 11, 14. He further claims his exposure resulted from the negligent, willful, and reckless conduct of LMC's predecessors. Id. at 28. In its Answer, LMC contends that Plaintiff's claims are barred by the WCA. Answer 29, CMS 51, 08/01/22.

## PROCEDURAL HISTORY

¶9 Plaintiff filed the instant complaint on July 15, 2021 against LMC, Glencore Ltd., and Cosmogony II, Inc. CMS 2, 07/21/21. He voluntarily dismissed his claims against Glencore, Ltd. See Order of Dismissal, CMS 196, 03/17/25. This Court issued a stay of proceedings against Cosmogony II, Inc. on June 16, 2022,

pursuant to a notice of bankruptcy filing on June 14, 2022. Order Staying Proceedings, CMS 10, 06/16/22 (SX-22-MC-027).   The stay remains in effect.

LMC filed its Answer on August 18, 2022. CMS 51, 08/01/22.   On August 20, 2022, Plaintiff filed the instant Motion for Judgment on the Pleadings re LMC's Affirmative Defense of Workers' Compensation. CMS 57, 08/20/22.   On August 21, 2022, Plaintiff filed the instant Substituted Motion for Summary Judgment on LMC's Affirmative Defense of Workers' Compensation. CMS 56, 08/21/22.   LMC opposed both of Plaintiff's motions on September 30, 2022 and filed a Cross-Motion for Summary Judgment based on the Workers' Compensation Act. CMS 67, 68, 09/30/22.   Plaintiff filed replies to LMC's Oppositions on October 05, 2022 and October 07, 2022. CMS 70, 72, 10/05/22 and 10/07/22.   The Court held a hearing on the motions on March 6, 2026.   Counsel for both parties appeared and presented arguments.   The Court took the matter under advisement.

## LEGAL STANDARD

¶10    Plaintiff, through a Motion for Judgment on the Pleadings, seeks "to dismiss or strike" LMC's Second Affirmative Defense that Plaintiff's claims are barred by the Workers' Compensation laws of the Virgin Islands (i.e., the Worker's Compensation Act or WCA) Mot. for J. on Pleadings 1; Answer 29.   He contends that, as a matter of law, LMC's WCA defense fails to state a claim for which relief

can be granted.[3]   LMC filed a cross-motion for summary judgment claiming the WCA is an affirmative defense to Plaintiff's claims.   To prevail on their respective motions, the party must establish that there is no material issue of fact to resolve and he is entitled to judgment as a matter of law. Benjamin v. AIG Ins. Co. of P.R., et. al., 56 V.I. 558, 566 (V.I. 2012)   Here, the Court finds that there is no material issue of fact to resolve and hence proceeds to determine whether, as a matter of law, either party is entitled to judgment.

## ANALYSIS

¶11   LMC raises the exclusivity provision of the WCA as an affirmative defense against Plaintiff's claims.[4]   Plaintiff seeks to dismiss or strike LMC's defense contending it does not apply to former employees alleging a latent disease. Mot. for J. on the Pleadings 6.   Alternatively, he contends that even if the WCA applies to such employees, LMC's defense should be dismissed because: 1) LMC failed

---

[3]  Although Plaintiff captions his motion as a "Motion for Judgment on the Pleading Under Rule 12(b)(6)", the Court views it as one pursuant to V.I.R. Civ. P. 12(c) targeting one of LMC's affirmative defenses, i.e., the WCA.   This view is based on the Court's determination that Rule 12(b) motions are designed to present defenses to claims for relief.   Plaintiff's motion presents no defense.   Instead, it seeks to strike LMC's defense.   Further, LMC introduced additional evidence not contained in Plaintiff's motion in its opposition which the Court does not exclude. (e.g., Plaintiff's deposition testimony regarding his employment and evidence concerning LMC's predecessor's participation in the Workers' Compensation Fund)   For this reason, the Court treats Plaintiff's motion for judgment on the pleadings as one for summary judgment under Rule 56. V.I.R. Civ. P. 12(d).

[4]  Plaintiff filed separate motions (i.e., a motion for judgment on the pleadings and a motion for summary judgment) attacking LMC's WCA affirmative defense.   LMC filed a cross-motion for summary judgment on its WCA defense.   This opinion addresses all three motions, plus their respective oppositions and replies.

Milton Burt v. Lockheed Martin Corp., et. al.
SX-21-CV-548
2026 VI Super 12P
Memorandum Opinion
Page 7

to produce proof of required payments of insurance premiums (i.e., continuous participation in the Workers' Compensation Program for all years of Plaintiff's employment); 2) LMC failed to present notice of Plaintiff's claim to the Workers' Compensation Division of the V.I. Department of Labor; and 3) Plaintiff was never employed by one of LMC's predecessor (i.e. Martin Marietta Alumina, Inc.) and thus is free to sue its successor-in-interest, (i.e. LMC)[5] Pl.'s Substituted Mot. for Summ. J. 6, 9, 12.   LMC counters that the WCA contains no restriction against former employees alleging post-employment discovery of latent occupational diseases. Opp. to Mot. for J. on the Pleadings 2.   It further argues that: 1) LMC's predecessors-in-interest who employed Plaintiff, purchased the requisite insurance coverage and participated in the Workers' Compensation Program at all relevant times; 2) the WCA imposes the initial notice/reporting obligation upon the injured person, not the employer, and that Plaintiff provided no notice; and 3) the WCA applies to bar Plaintiff's claim against it as successor-in-interest to the entities that employed Plaintiff, i.e., Martin Marietta Aluminum, Inc. and Martin Marietta Properties, Inc. Opp. to Substituted Mot. for Summ. J. 6 – 9.   As explained below, Plaintiff's alleged injuries are not compensable under the WCA.

[5] In light of the Court's ruling regarding Plaintiff's right to worker's compensation and Plaintiff's alternative argument regarding LMC's insurance coverage, the Court does not address Plaintiff's two remaining alternative arguments.

1) <u>The Virgin Islands Workers' Compensation Act Does Not Apply to Occupational Diseases That Manifest Post-Employment</u>.

LMC raises the exclusivity provision of the WCA as a bar to Plaintiff's claims. That provision states:

(a) When an employer is insured under this chapter, the right herein established to obtain compensation shall be the only remedy against the employer; but in the case of accident to, or disease or death of, an employee not entitled to compensation under this chapter, the liability of the employer is, and shall continue to be the same as if this chapter did not exist.

24 V.I.C. § 284(a) Clearly, for the exclusivity provision to apply, Plaintiff must have a right to obtain compensation for his injury. Put differently, if Plaintiff's injuries are compensable under the WCA he is barred from pursuing tort remedies against LMC. Conversely, if they are not, he is free to pursue his tort claims. Although framed differently by the parties, the key issue here is: Whether the Virgin Islands WCA apply to occupational diseases which do not manifest until post-employment? No court has directly addressed this issue and hence it is one of first impression.

This Court commences its analysis by interpreting the statute itself. In so doing, it first determines "whether the language at issue has a plain and unambiguous meaning." Richards v. Public Employees Relations Bd., 2024 V.I. 37 at * P16 (V.I. 2024); Brady v. Gov't of the V. I., 57 V.I. 433, 441 (V.I. 2012) If "the language is unambiguous and the statutory scheme is coherent and

consistent, no further inquiry is needed." Id. If the language is susceptible to more than one interpretation, then it is ambiguous. Id. at 17. The Virgin Islands Supreme Court instructs that

> courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, the first cannon is also the last: judicial inquiry is complete.

People of the V.I. v. Baxter, 49 V.I. 384, 388 (V.I. 2008) (citing Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253 – 54 (1992)) In construing statutes, the Court must avoid interpretations that are unjust or lead to absurd results as such are inconsistent with legislative intent. Dupigny v. Tyson, 66 V.I. 434, 440 (V.I. 2017) An absurd result is one which stems from an interpretation that renders a statute nonsensical or superfluous or an interpretation that defies rationality. Id. The Court is also mindful that, as per Virgin Islands law, "words and phrases shall be read with their context and shall be construed according to the common and approved usage of the English language." 1 V.I. C. § 42. With these principles in mind the Court commences to interpret the pertinent provisions of the WCA.

As a preliminary matter, the Court notes that the purpose of the WCA is to "afford expeditious compensation to employees or their dependents without regard to fault or negligence of employer or employee." 24 V.I.C. § 250(a) It "is designed to provide prompt payment of benefits without regard to fault; and to relieve employers and employees of the burden of civil litigation." Robles v.

Hovensa, L.L.C., 49 V.I. 491 (V.I. 2008) (emphasis supplied) (citing Chinnery v.

Gov't of the V.I., 865 F.2d 68, 71 (3d Cir. 1989))   As stated by the framers of the

WCA,

> The Legislature of the Virgin Islands hereby finds and declares that the inability of common-law rights and remedies in redressing injuries received by workers has given rise to the need for Worker's Compensation legislation that will afford expeditious compensation to employees or their dependents without regard to fault or negligence of employer or employee.

24 V.I.C. § 250(a)   The intent is to "provide compulsory Government insurance

for the protection of all employees covered by the Act." Ortiz v. Gov't of the V.I.,

Civ. No. 758/1983, 1986 V.I. LEXIS 25, at * 3 – 4, (Terr. Ct. Oct. 7, 1986) (citing

Carmona v. DeJongh, 157 F. Supp. 540 – 42 (D.V.I. 1958)).

Concerning the right to obtain compensation, the WCA provides in pertinent

part:

> Right to compensation for personal injury or occupational disease
>
> (a) Every employer shall pay compensation as hereinafter specified for the disability or death of an employee resulting from a personal injury or occupational disease arising out of and in the course of his employment, irrespective of fault as a cause of the injury or death . .

24 V.I.C. § 252(a) (emphasis supplied)   Assuming LMC was insured, in order for

the WCA to apply to Plaintiff's claims, the following must be established:

1) Plaintiff suffered from a personal injury or occupational disease;

2) The personal injury or occupational disease arose out of the course of

employment; and

3) The personal injury or occupational disease arose in the course of employment.

Here, Plaintiff claims to suffer from pneumoconiosis as a result of toxic dust inhaled during this employment at the Alumina Plant. Pneumoconiosis is a group of lung diseases caused by inhaling dust. Pneumoconioses (Jan. 19, 2024), https://www.cdc.gov/niosh/pneumoconioses/about/index.html (last visited Mar. 23, 2026); Pneumoconiosis Lung and Respiratory System, https://www.hopkingmedicine.org/health/conditions-and disease/pneumoconiosis (last visited Mar. 23, 2026) An occupational disease is an injury "contracted as a result of exposure to debilitating conditions or substances in the course of employment." *Occupational Disease*, Black's Law Dictionary (10th ed. 2014) As such, Plaintiff's claim that he suffers from pneumoconiosis satisfies the first prong for entitlement to compensation.

To satisfy the second prong, the claimed occupational disease must arise out of the course of employment. To arise means to "begin to occur or to exist; to come into being or attention." *Arise*, www-merriam-webster.com/dictionary/arise. See also *Arise*, Black's Law Dictionary (10th ed. 2014) (defining arise as "to come to one's attention") The plain meaning, then, of the phrase "arise out of" is to come into being or attention because of some matter or event. The phrase implicates a causal connection between two events

or circumstances. Hence to arise out of the course of employment means Plaintiff's disease came into being, because of, or was caused by, some event or circumstance at his employment. See Slater v. McKinsey & Co., 530 F. Supp. 3d 1318, 1325 (N.D. Ga. 2021) (citing Boulware v. Quiktrip Corp., 466 S.E. 2d 662 – 63 (Ga. Ct. App. 1997)) (stating, in reference to Georgia's Workers' Compensation Act, "the words 'arising out of' mean that there must be some casual connection between the conditions under which the employee worked and the injury which she received."); Prescott v. Premier Mfg. Corp., No. W2021-00052-SC-R3-WC, 2021 Tenn. LEXIS 530, at * 13 (Tenn. Workers' Comp. Panel Nov. 18, 2021) (stating "'arising out of employment' refers to causation, meaning there is a 'causal connection between the conditions under which the work is required to be performed and the resulting injury …'); Owens v. Giant Eagle Inc., No. 110666, 2022 Ohio App. LEXIS 175, at * P13 (Ohio Ct. App. 8th Cir. 2022) (stating "[t]he arising out of prong refers to the causal connection between the employment and the injury.") Here, Plaintiff alleges he suffers from pneumoconiosis as a proximate result of his exposure to toxic substances at the Alumina Plant. Accordingly, his exposure and disease, as claimed, arose out of the course of his employment, and satisfies the second prong.

The third prong requires proof that the occupational disease arose in the course of employment. The plain meaning of "arise in the course of employment"

is to begin to occur or to exist, or to come into being or attention, in (i.e., during) the course of employment, i.e., while performing the duties of employment. See Prescott, No. W2021-00052-SC-R3-WC, 2021 Tenn. LEXIS 530, at * 13 (stating "'[i]n the course of employment' means that the injury occurs while the employee is performing a duty he is hired to perform."); Slater, 530 F. Supp. 3d at 1326 (stating "[a]n injury arises in the course of employment if the employee is engaged in that employment at the time the injury occurs.")   The phrase signifies a time and place component and is distinct from the second prong. Owens, No. 110666, 2022 LEXIS Ohio App. 175, at * 13 (stating "the 'in the course of' prong relates to the time, place, and circumstances of the injury.")   Thus, Plaintiff's disease, to be compensable under the WCA, must have come into existence or attention while he was engaged in employment duties.   He alleges his disease became evident on July 21, 2019. Compl. 2:12.   LMC admits the existence of this allegation. LMC's Resp. to Pl.'s Undisputed Statement of Facts 2:2.   This Court thus concludes that Plaintiff's disease arose, i.e., came into being on July 21, 2019. Plaintiff ceased his employment with LMC's predecessors in 1989 and left the Alumina Plant in 1995.   He certainly was not engaged in employment duties twenty-six (26) years later when his disease came into being or to his attention. By this simple reasoning, his disease did not arise in the course of his employment and hence the third prong has not been met.   Accordingly, Plaintiff's occupational

disease is not compensable under the WCA as it did not manifest until post-employment.

LMC makes several arguments to the contrary. First, it contends "the plain language of the WCA notice provision specifically provides the ability for workers to make a claim for latent occupational diseases without any limitation to employment status." Opp. to Mot. for J. on the Pleadings 2, 9. LMC relies on the Notice provision of the act which states in pertinent part:

> **257. Notice, by employee, of injury; report by employer**
> **(a)** By personal delivery or by mail, written notice of an accidental injury shall be given by the person injured or someone in his behalf to the employer or any of his agents within 48 hours after the injury. In the case of an occupational disease notice shall be given by the person injured or someone in his behalf to the employer or any of his agents within 30 days from the first distinct manifestation thereof.

24 V.I.C. § 257(a) This provision governs the notice obligation of employees who suffer an injury. It requires them, in the case of an occupational disease, to give written notice to their employer within 30 days from manifestation. This presumes the existence of an employee-employer relationship. There is an inherent recognition in the statute that occupational diseases take time to develop, or manifest, and thus it provides a longer reporting period. The reasonable interpretation is that such injuries are deemed to occur (i.e., exist) upon the first distinct manifestation, not upon exposure to potentially harmful substances which

may or may not develop into an occupational disease. Based upon the evidence, the first distinct manifestation of Plaintiff's injuries did not occur until July 21, 2019.

The statute does not speak to the timing of manifestation (i.e., pre-, or post-employment) However, it is entitled "Notice, by employee, of injury; report by employer" thus implying its general application to employees and employers. The act presumes the person injured is an employee when the first manifestation occurs, and that he has an employer to which he or she could report (within 30 days of injury) LMC is correct when it says the statute allows workers to make a claim without limitation as to their employment status. However, it does not address the critical issue of a person's right to compensation. It merely outlines the procedure for giving notice of an injury. Someone, for example, may give proper notice pursuant to Section 257 and still not be entitled to compensation because his or her injury did not occur out of, or in the course of, employment. LMC's reliance on Section 257 is thus misplaced. In an analogous setting, the Virgin Islands District Court in Purjet v. Hess Oil V.I. Corp., agreed that a "subclinical injury resulting from exposure to asbestos is insufficient to constitute the actual loss or damage to a plaintiff's interest required to sustain a cause of action under generally applicable principles

of law." 22 V.I. 147 (D.V.I. 1985) (citing <u>Schweitzer v. Constr. Rail Corp.</u>, 758 F.2d 936, 942 (3d Cir. 1985)   Subclinical means "not detectable or producing effects that are not detectable by the usual clinical tests." *Subclinical*, www.merriamwebster.com/dictionary/subclinical.    The same rationale applies here.   Mere exposure to bauxite prior to manifestation of injury should not suffice to pursue a worker's compensation claim.   In short, there is no injury until manifestation.   Accordingly, LMC's reliance on Section 257 is thus misplaced.

Second, LMC argues that Plaintiff's injury occurred in the course of his employment as he was injured at the time of his alleged <u>exposure</u> to toxic dusts which <u>occurred during his employment</u>.   At the March 6, 2026 hearing, LMC posited that Plaintiff's exposure caused a "harmful change in the human body" that occurred during the course of his employment although he was unaware of it.   This argument falsely presumes that every exposure causes or will cause harm.   Such is not the case.

Under Virgin Islands law, an injury "means any harmful change in the human organism arising out of and in the course of employment . . ." 24 V.I.C. § 251(a) LMC points to not one piece of evidence suggesting that Plaintiff, during the course of employment, experienced a harmful change in his body.   Instead, he asks the Court to presume a disease (or occupational injury of some sort) existed

during the course of Plaintiff's employment based solely on his exposure. However, the unidentified "harmful change" could well have occurred twenty-five years ago, <u>post-employment</u>; and hence not in the course of employment. LMC is clearly conflating exposure to toxins which may (or may not) lead to a disease with the actual development of a disease that manifests later. At the exposure stage, one cannot name, identify, or label a disease. Accordingly, under the Virgin Islands statutory scheme, there is no occupational disease (i.e., injury) until manifestation.

Third, LMC cites several cases in support of its position that the WCA has been applied to former employees. Opp. to Mot. for Summ. J. 1. As explained above, the issue is not whether the statute applies to former employees. LMC's citations are thus irrelevant. It also cites some thirty (30) Worker's Compensation statutes that allegedly apply worker's compensation protection to former employees who develop injuries post-employment. <u>Id</u>. at 7 – 8. LMC makes zero attempts to compare any of those statutes to the Virgin Islands WCA and fails to articulate how they support its contention. This Court will not forage through those statutes in search of relevant material.

The Court's conclusion is supported by, and consistent with the statutory scheme of the WCA which reveals an intent to apply primarily to current

employees. [6] See Defoe v. Phillip, 56 V.I. 109, 121 (V.I. 2012) (emphasis supplied) (stating, "the VIWCA immunizes 'employers' from lawsuits filed by employees who are entitled to workers' compensation benefits. . ."); See also Ortiz, Civ. No. 758/1983, 1986 V.I. LEXIS 25 at * 4 (emphasis supplied) (stating, "The basic prerequisites for obtaining work[er]'s compensation are: (1) The injury must arise out of and in the course of employment; (2) The injury must fit within the statutory definition of 'injury'; and (3) The injured party must be an employee of an employer covered by the Act.") This is because an injury or disease suffered by a current employee while performing his or her duties would always occur in the course of employment and any claim for compensation would occur while he or she is still an employee. A review of the act reveals the consistent use of the term "employee."

With respect to medical rehabilitation, the act provides, "For any injury covered by this chapter, and the employee shall be entitled to all medical services . . ." 24 V.I.C. § 254a (emphasis supplied) Regarding vocational rehabilitation, it provides, "[o]ne of the primary purposes of this act shall be restoration of the injured employee to gainful employment and to assist in lessening or removing

---

[6] In theory, the act could apply to a former employee who, for example, is diagnosed with an occupational disease during employment and resigns shortly thereafter. Such a person would have a right to compensation but would have to submit notice within 30 days of the diagnosis (i.e., manifestation of the disease) This, however, is the rare case.

any handicaps resulting from his injuries." 24 V.I.C. § 254b (emphasis added)   It further provides that "an employee who has suffered an injury covered by this act who, as a result of the injury, is unable to perform work for which he has previous training or experience, shall be entitled to such vocation rehabilitation services, including retraining and job placement, as may be reasonably necessary to restore him to suitable employment." Id.   This provision contemplates the return of employees to the employment world and thus suggests the statute's intent to cover short-term curable injuries where the claimant is still an employee. Applicable regulations define a WCA **claimant** as "an employee or worker suffering from an injury, occupational disease or illness who has filed a claim for workers' compensation benefits. Insurance Coverage for Exempt Employers and Employees, CVIR 24-011-000 § 251-3 (1992)   They further define **worker** as "an 'employee' in accordance with 24 V.I.C. § 251(a)." Id.   Section 251(a) defines employee as "any person, including a minor, employed under any appointment or contract, express or implied, oral or written, or in the service of any employer." 24 V.I.C. § 251(a)   With respect to purpose, the Act provides, "One of the primary purposes of this act shall be restoration of the injured employee to gainful employment and to assist in lessening or removing any handicaps resulting from his injuries." 24 V.I.C. § 254b(a)   This analysis of various sections of the WCA confirms a prime legislative intent to provide a right to compensation for injuries

to individuals currently employed.

  2) <u>LMC Has Failed to Establish its Status as an Insured Employer</u>

  Plaintiff argues alternatively that LMC's WCA affirmative defense should be dismissed because it failed to produce proof of required payments of insurance premiums. (i.e., continuous participation in the Workers' Compensation Program for all years of Plaintiff's employment) LMC contends that its predecessors-in-interest, who employed Plaintiff purchased the requisite insurance coverage and participated in the Workers' Compensation Program at all relevant times. The parties' contentions raise two issues: a) what evidence is sufficient to establish a prima facie case that LMC's predecessors were insured; and b) is insurance coverage required for the entire duration of Plaintiff's employment? Both issues are addressed below.

  The WCA clearly requires that an employer be insured thereunder in order for the exclusivity provision to apply. 24 V.I.C. § 284(a) (providing that "When an employer is insured under this chapter, the right herein established to obtain compensation shall be the only remedy against the employer.") It obliges the employer to secure appropriate insurance. 24 V.I.C. § 272(a) (providing "Every employer shall secure the payment of compensation under this chapter by insuring with the Workers' Compensation Fund created by this chapter.") Failure to file required reports and pay the premium due relegates the employer's status

to that of "uninsured employer." Here, Plaintiff worked for Martin Marietta Aluminum, Inc. from 1970 to 1984 and for Martin Marietta Aluminum Properties, Inc. in 1985. LMC is the successor-in-interest to those entities as well as to their parent company Martin Marietta Corporation and has raised the WCA as an affirmative defense. It thus carries the burden to establish a prima facie case that its predecessors were properly insured. Gov't of the V.I. v. United Indus. Svcs. Transp., et. al., 64 V.I. 312, 333 (V.I. 2016) (placing the burden of proving an affirmative defense on the defendant); Gumbs-Heyliger v. CMW & Ass'ns. Corp., 73 F. Supp. 3d 617, 622 (D.V.I. 2014) (stating "Under Virgin Islands law, the burden of proving affirmative defenses in a civil case is on the defendant").

To establish insurance coverage, LMC submitted receipts from the Virgin Islands Department of Finance indicating payments for worker's compensation that covered the period from March 12, 1976 through December 31, 1980 and for the years 1987, 1988 and part of 1989. LMC's Resp. to Pl.'s Undisputed Statement of Facts, Ex. 7. It also submitted a September 26, 2011 affidavit prepared by Eddie L. Gaut, a former employee of Martin Marietta, which stated in pertinent part that:

  a. Gaut worked at the St. Croix Alumina Plant from 1964 until 1980;

  b. In the early 1970s, he became the Plant Controller, Financial Manager;

  c. Based on his personal knowledge and review of documents, Harvey Aluminum, Inc. Harvey Alumina, Inc., Martin Marietta Aluminum, Inc.,

and Martin Marietta Alumina, Inc. participated in the Virgin Islands Workmen's Compensation Insurance Fund during the entire time those companies operated the St. Croix Alumina Plant. Each entity obtained workmen's compensation insurance coverage for all of its respective employees during the time they worked at the St. Croix Alumina Plant.

d. He reviewed documents from the Department of Finance from 1974 to 1980 and 1986 to 1989, which reflect payments to the Workmen's Compensation Insurance Fund by two Martin Marietta Aluminum Properties, Inc. Those documents further reflect workmen's compensation payments made to individual employees of a Martin Marietta subsidiary during this time period.

e. It is Gaut's understanding that documents predating 1974 and covering the time period from 1981 to 1985 were not able to be located. Based on his personal knowledge and review of the relevant documents, none of the companies (Harvey Aluminum, Inc., Harvey Alumina, Inc., Martin Marietta Aluminum, Inc., Martin Marietta Alumina, Inc., or Martin Marietta Aluminum Properties, Inc.) experienced a lapse in workmen's compensation insurance coverage during the time period when those entities owned and/or operated the St. Croix Alumina Plant.

LMC's Opp. to Pl.'s Substituted Mot. Summ. J., Ex. 6 (Gaut Aff. at 4:3 – 7, 6:14, 8:23 – 24) The Virgin Islands Legislature has set the requisite standard of proof to establish that an employer is insured under the WCA. The standard is prima facie evidence as shown by payment receipts from the Commissioner of Finance (COF) 24 V.I.C. § 273(d) (providing, "On receipt of payment, the COF shall forward to the employer a receipt which shall be prima facie evidence of said payment of the premium and insurance coverage.") The Virgin Islands Supreme Court has further interpreted Section 273(d) as providing that "a Certificate of Government Insurance Coverage constitutes 'prima facie evidence' that an

employer is insured under the VIWCA." Island Tile & Marble, LLC v. Bertrand, 57 V.I. 596, 624 – 25 (V.I. 2012)  LMC submitted no certificates.  However, its submission of COF receipts is prima facie evidence of coverage from 1976 through 1980.  The Gaut affidavit did not emanate from the Department of Finance, was created twenty-six (26) years after the relevant time period (i.e., 1970 to 1985) and does not specify what documents Gaut reviewed.   This Court concludes that it is insufficient to meet the requisite standard of proof to establish prima facie evidence that LMC was an insured employer.

Here, Plaintiff claims that he was exposed to toxic dust during the course of his employment at the Refinery, i.e., 1967 to 1995 (excluding 1986 and 1987). Compl. at 2:7 – 9.   However, the alleged cause of his injury (i.e., toxic exposure), as it pertains to the relevant predecessors of LMC, spanned a period of fifteen (15) years, i.e., 1970 – 1985.   This is contrary to the typical non-latent injury wherein an accident, or other injury causing event occurs, within a relatively short period of time from, if not simultaneously with, the injury.   Under the circumstances here, logic suggests that LMC must establish coverage for the totality of Plaintiff's exposure (i.e., the cause of injury) to be immune totally from tort liability.   Its insurance coverage for five (5) of the fifteen (15) years of Plaintiff's exposure is insufficient to deem it an insured employer for the ten (10) years it failed to establish insurance coverage, i.e., 1970 to 1975 and 1981 to

Milton Burt v. Lockheed Martin Corp., et. al.
SX-21-CV-548
2026 VI Super 12P
Memorandum Opinion
Page 24

1985. Accordingly, LMC was not properly insured and cannot claim immunity even if the WCA applied to Plaintiff's occupational disease.

## CONCLUSION

¶34 Having considered the evidence presented, this Court finds that there is no genuine issue of material fact concerning the issues raised by Plaintiff's and LMC's motions for summary judgment. For the reasons stated above, the Court concludes that the WCA does not apply to occupational diseases that manifest post-employment. Even if it did apply, Plaintiff would still not be entitled to compensation because LMC was not an insured employer entitled to immunity. Accordingly, the Court will grant Plaintiff's motion for summary judgment and deny LMC's cross-motion for summary judgment. An order consistent herewith will be entered contemporaneously.

DATE: March 24, 2026

_____
ALPHONSO G. ANDREWS, JR.
Superior Court Judge

ATTEST:

TAMARA CHARLES
Clerk of the Court

_____
COURT CLERK III
____03-24-2026____
DATE